**STATE of Minnesota, Respondent,**

v.

**Maryann Mathilda Miller OBASI, Appellant.**

**No. C3–88–186.**

Court of Appeals of Minnesota.

Aug. 23, 1988.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, Roger S. Van Heel, Stearns Co. Atty., St. Cloud, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by FOLEY, P.J., and NORTON and IRVINE,* JJ., without oral argument.

## OPINION

FOLEY, Judge.

Appellant Maryann Mathilda Miller Obasi was convicted of attempted first degree murder in violation of Minn.Stat. § 609.185(1) (1986). We affirm.

## FACTS

Maryann and Valentine Obasi were married on February 26, 1985. While neither

---

* Acting as judge of the court of appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

had been previously married, Maryann had two children. The couple lived together from March through June 1985. During this time Valentine was physically and verbally abusive to Maryann and also to her children.

Although they lived separately after June 1985, the couple maintained a stormy on-again off-again relationship for the next two years. According to Maryann, later in 1985 Valentine raped her, choked her, slammed her head against a wall and into a garage door, called her names, pulled a knife on her, hit her in the face, and also slapped her daughter. At various times throughout their marriage, both Maryann and Valentine obtained protective orders against the other.

From the winter of 1985 to July 1986 Valentine did not abuse Maryann. However, in July 1986 when a protective order was lifted, and Valentine and Maryann began seeing each other on a daily basis, he apparently began abusing her again. According to Maryann, in the fall of 1986 Valentine threw her down some steps causing ligament damage to her knee. In early 1987 Valentine physically assaulted Maryann because he suspected her of seeing another man. Maryann claims it was at this time that Valentine began calling Maryann, threatening to kill her and her children.

On March 31, 1987 Maryann asked Valentine to return some of her personal property which he had in his possession. When he refused to do so, Maryann went over to his apartment and asked him to bring the property outside. Valentine still refused. In retaliation, Maryann broke the rear window of Valentine's car. He responded by throwing chunks of concrete on her car. Maryann and Valentine were subsequently taken to the St. Cloud Police Station where each was given a citation for causing damage to property. Maryann was directed to appear in court on April 15, 1987 and Valentine on April 17, 1987.

After this incident Maryann had no physical contact with Valentine. However, Maryann claims Valentine continued to make threatening calls to her, some of which were death threats, and that sometimes he would call and hang up when she answered. According to Maryann, the last call, a "hang up" call, was on April 16, 1987.

On April 14, 1987 Maryann purchased a .22 caliber semiautomatic pistol. On April 15, 1987 while at the courthouse, Maryann asked the deputy court administrator what time Valentine would be making his court appearance. She was told Valentine was scheduled to appear on April 17, 1987 at 8:30 a.m. in room 301.

On April 17, 1987 Maryann loaded her gun and fired it to ensure that it was in operating condition and to test its accuracy. She then left for the courthouse. At approximately 8:15 a.m. she arrived at the courthouse and sat on a bench outside room 301 to wait for Valentine. At 9:30 a.m. Valentine arrived. He went into room 301 to check in and to fill out a request form for a public defender. Maryann waited outside the room watching Valentine's actions. After filling out the various forms, Valentine was told to report to courtroom 315. As Valentine left room 301 and was walking to the designated courtroom, Maryann drew her gun and shot at Valentine. Four additional shots were also fired. Bullets struck Valentine in the back and upper palate.

After the shooting, Valentine was taken to the hospital for treatment and Maryann drove to the police station and turned herself in. Officer Lawrence Atkinson, the officer on duty, testified that Maryann asked him "Is he dead yet?" He also testified that Maryann told him "that it was better to kill someone than to wait for them to do it to you." This testimony was corroborated by that of investigator Kathy Nolan.

Maryann was subsequently charged with attempted first degree murder. She waived the right to a jury trial and was tried by the court on September 22, 1987.

At trial there was conflicting testimony about the shooting. Valentine testified that as he walked out of room 301 Maryann called his name. He claimed he ignored her and continued walking toward court-

room 315. According to Valentine, Maryann then tapped his shoulder. When he turned to look at her, she took out her gun and shot him in the face. Valentine proceeded to run down the hall to a judge's chambers. He then heard additional shots and felt a bullet lodge in his back.

Maryann testified that she went to the courthouse on April 17, 1987 intending to hurt Valentine but not intending to kill him. She testified that if she had intended to kill him she would have purchased a larger caliber gun. She claimed when Valentine came out of room 301 he glared at her before he began walking to the courtroom. As he walked away from her, Maryann claimed she drew her gun, aimed at Valentine's back, and fired. After she hit Valentine in the back, she claimed she fired the remaining bullets in her gun into the courthouse wall. She denied calling Valentine's name or shooting him in the face. Rather, she contended one of the bullets she fired into the wall must have ricocheted and lodged in Valentine's palate.

Maryann was found guilty of attempted murder in the first degree. She was sentenced to a 52 month prison term, a downward departure from the presumptive 70 month sentence. The sentence imposed is not an issue on appeal.

## ISSUE

Was the evidence sufficient to support the conviction for attempted first degree murder?

## ANALYSIS

In review of a claim of insufficiency of the evidence, the appellate court determines whether, under the facts in the record and any legitimate inferences that can be drawn from them, the finder of fact could reasonably conclude that the defendant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). The evidence must be viewed in the light most favorable to the prosecution and it is assumed that the fact finder believed the state's witnesses and disbelieved any contradictory evidence. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). Resolu-tion of conflicting testimony and determination as to the credibility of witnesses is exclusively within the province of the fact finder. *State v. Fisler*, 374 N.W.2d 566, 569 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985).

Maryann argues that the evidence was insufficient as a matter of law to support a conviction for attempted first degree murder. Maryann asserts that she merely intended to hurt Valentine, not kill him.

■ Intent is a subjective state of mind and is established by reasonable inferences drawn from surrounding circumstances. *State v. Johnson*, 374 N.W.2d 285, 288 (Minn.Ct.App.1985), *pet. rev. denied* (Minn. Nov. 18, 1985) (citing *State v. Schweppe*, 306 Minn. 395, 237 N.W.2d 609 (1975)). "With intent to" as used in Minn.Stat. § 609.185(1) means

> that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result.

Minn.Stat. § 609.02, subd. 9(4) (1986).

■ There is no merit to Maryann's argument that the evidence was insufficient to establish intent to kill. Maryann testified that she was familiar with the operation of her .22 caliber revolver. She had test fired prior to leaving for the courthouse to ensure that it was functioning correctly. While Maryann testified that she aimed for the middle of Valentine's back thereby intending to only hurt him, he testified she shot him at short range, "within an arm's length," in the face. Valentine's testimony was corroborated by an eyewitness who testified that Maryann pointed the gun at Valentine and fired at him as he was walking toward her. *See, e.g., State v. Plan*, 316 N.W.2d 727, 728 (Minn.1982) (intent shown by gun pointed at victim and fired at short range without provocation by victim). The short range is sufficient to show intent to kill. *See, e.g., State v. Harris*, 405 N.W.2d 224, 229 (Minn.1987) (sawed off shotgun fired less than 6 feet from victim sufficient to show intent).

Maryann showed callousness following the shooting, and this is "consistent with the state's theory that the killing was intentional." *See Plan*, 316 N.W.2d at 728. Furthermore, the evidence indicates that Maryann fired five shots and at least one at close range with the gun pointed at Valentine. *See State v. Bryant*, 281 N.W. 2d 712, 714 (Minn.1979). Therefore, we find there is sufficient evidence supporting the trial court's finding of an intent to kill.

However, Maryann further argues that if this court finds there is sufficient evidence to support the trial court's finding of intent to kill, she should have been convicted of no more than attempted first degree manslaughter under an "imperfect self defense theory." As the "imperfect self defense theory" has not been adopted by Minnesota Supreme Court, we decline to do so.

### DECISION

Affirmed.