STATE of Minnesota, Respondent,

v.

James Douglas RING, Appellant.

No. C2–95–2398.

Court of Appeals of Minnesota.

Oct. 22, 1996.

---

Hubert H. Humphrey III, Attorney General, Linda M. Bullen, Thomas R. Ragatz, Assistant Attorneys General, St. Paul, for Respondent.

L. Douglas Storey, Cottonwood County Attorney, Windom, for Respondent.

Lawrence W. Pry, Assistant State Public Defender, St. Paul, for Appellant.

Considered and decided by SCHUMACHER, P.J., and NORTON and HARTEN, JJ.

## OPINION

SCHUMACHER, Judge.

James Douglas Ring appeals his conviction for attempted first-degree burglary, arguing the evidence is insufficient to support the conviction. We affirm.

## FACTS

On June 3, 1994, Ring met his friend, Nancy Kennon, and Robyn Thomas at the American Legion club in Windom, Minnesota. Ring made several sexual comments to Thomas and told her that he would like to move in with her after her divorce was final. Thomas rebuffed Ring's comments as "not likely."

Ring, Kennon, Thomas, and Don Carlson went to Carlson's house after the bar closed. During the early morning hours of June 4, Thomas became sick and asked to be taken home. Ring offered to take Thomas home, and she reluctantly agreed. Thomas left her car at Carlson's and gave her keys to Kennon. After Ring took Thomas home, he agreed to take home Thomas's baby sitter. Thomas did not give Ring permission to return to her house afterwards.

After dropping off the baby sitter, Ring returned to Carlson's house and demanded Thomas's keys from Kennon. When she refused, Ring became angry and left Carlson's house.

Ring then returned to Thomas's house where her neighbor, Richard Rothstein, saw him parked in front of her house. Some time later, Rothstein noticed the same vehicle parked near Thomas's rear deck. Rothstein took down the license plate number and called the Cottonwood County Sheriff's Department. Ring left, but Rothstein later saw him return. Rothstein testified he saw Ring remove a screen on a lower story window. Rothstein yelled at Ring, who answered that he was trying to get into the residence. Ring left after Rothstein yelled at him again.

The police, responding to Rothstein's call, found Ring sitting in his car in his mother's driveway. Officer Jeffrey Shirkey asked Ring where he was earlier in the evening and Ring said he was over at Thomas's house. Officer Glen Ward testified that Ring said he had gone around Thomas's house and was raising a screen when Rothstein yelled at him. At different times, Ring also told the police he was at Thomas's house because Thomas's estranged husband had asked him to check on her, and also that he, Ring, might be moving in with her.

Thomas later found that one of the window screens was slashed in a "V" shape and that the bushes around the window were trampled. The front door also showed evidence of fresh gouge marks.

Ring was arrested and charged with two counts of attempted first-degree burglary. Ring waived a jury trial and the trial court found him guilty of one count of attempted first-degree burglary. Ring appeals.

## ISSUE

Is the evidence sufficient to sustain a conviction for attempted first-degree burglary where the trial court was unable to determine what crime the defendant was attempting to commit inside the building?

## ANALYSIS

Ring argues the evidence is insufficient to support his conviction for attempted first-degree burglary because the trial court did not find which specific crime he intended to commit. We disagree.

Evidence is sufficient to support a conviction if, given the facts in the record and any legitimate inferences to be drawn from those facts, a fact-finder could reasonably find that the defendant committed the crime. *State v. Wilson*, 535 N.W.2d 597, 605 (Minn.1995). This court reviews the evidence in the light most favorable to the verdict and assumes that the fact-finder believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). Inconsistencies in the state's case do not require reversal of a conviction if the testimony, taken as a whole, is consistent and credible. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). The fact-finder determines the weight and credibility of witnesses' testimony. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989).

> Where a conviction is based on circumstantial evidence, the verdict will be sustained on appeal when the reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of guilt.

*State v. Alton*, 432 N.W.2d 754, 756 (Minn. 1988). The same standard of review applies in criminal cases whether the case was tried to a jury or to the court. *State v. Ibarra*, 355 N.W.2d 125, 130 (Minn.1984).

Commission of attempted burglary in the first degree is accomplished if the person enters a building in which another person is present without consent of the owner and with the intent to commit a crime. Minn.Stat. §§ 609.17, 609.582, subd. 1(a) (1994). For burglary, intent means the state must prove a defendant intended to commit some independent crime other than trespass after illegal entry into the building. *State v. Larson*, 358 N.W.2d 668, 670 (Minn.1984).

> [T]he proof of intent to commit a crime in connection with proof of burglary is always one that must rest on a permissible inference from the facts proved.

*State v. Crosby*, 277 Minn. 22, 25, 151 N.W.2d 297, 300 (1967). Like premeditation in first-degree murder prosecutions, this intent must generally be proved from the circumstances surrounding the defendant's acts. *Cf. State v. Lodermeier*, 539 N.W.2d 396, 397 (Minn. 1995) (premeditation must generally be inferred from circumstantial evidence).

Here, the evidence overwhelmingly supports the inference that Ring intended to commit a crime upon entering the house. The trial court made findings that (1) Ring made sexual comments to Thomas; (2) Ring had requested the keys to Thomas's house; (3) he was seen around her house a number of times that night; (4) his car was up on the lawn by the rear deck; (5) Rothstein yelled at Ring and told him he could not get in through the window; (6) the screen where Rothstein saw Ring was found slashed; (7) the bushes below the window were trampled; and (8) the front door showed fresh gouge marks. The circumstances shown—persistent, surreptitious attempts to make a forced entry after Ring had expressed sexual designs on the house's occupant—exclude any rational inference that Ring had a non-criminal intent in attempting entry. *See People v. Barnhart*, 638 P.2d 814, 815 (Colo.Ct.App. 1981) (holding that court must define in jury instructions specific crime thought committed to allow jury to decide whether defendant's intent at time of commission was intent prescribed by burglary statute), *cert. denied* (Colo. Jan. 11, 1982).

## DECISION

We conclude the evidence was sufficient to sustain Ring's conviction for attempted first-degree burglary.

**Affirmed.**