**Derrick HARVEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–98–00157–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 16, 1999.

Ricardo N. Gonzalez, Houston, for appellants.

Robert F. McStay, Jr., Houston, for appellees.

Panel consists of Justices AMIDEI, EDELMAN and WITTIG.

## OPINION

MAURICE AMIDEI, Justice.

Derrick Harvey appeals his conviction by a jury for the aggravated robbery of Sylvester Foy. The jury assessed his punishment at 60 years imprisonment, enhanced by one prior felony conviction. In three points of error, appellant contends: (1) & (2) the evidence is legally and factually insufficient to support his conviction, and (3) the trial court erred in admitting evidence of two extraneous offenses at the guilt-innocence phase of the trial. We affirm.

Appellant was charged with three offenses of aggravated robbery with a deadly weapon, all occurring on August 15, 1997, and within a short time of each other. This appeal is from the conviction of appellant for the robbery of Sylvester Foy (Foy). The first robbery occurred at about 3:00 p.m., August 15, 1997. Ruben Rosas (Ruben) and his cousin, Luciano Rosas (Luciano), observed appellant taking electrical wire from their company truck parked in front of their home. When Ruben and Luciano walked outside, appellant took a shotgun from the bed of the truck,

pointed it at them, and fired. Appellant then got into a blue Camino, driven by Jerry Dorsey (Dorsey), and they left. Appellant and Dorsey were captured by police officers about one and one-half hours later, and were held at a flea market for identification by the victims. Both Ruben and Luciano identified appellant at the flea market, but could not positively identify appellant at the trial for the robbery of Foy. Luciano was struck in the chest by one of the shotgun pellets, and was taken to the hospital where he was treated and released.

After robbing the Rosas cousins, appellant and Dorsey drove to Kimberly Woodard's house, arriving there a few minutes after they had left the Rosas' house. Foy was visiting Ms. Woodard, and observed Dorsey from a window removing the registration and inspection stickers from Foy's parked car while appellant stood by with a shotgun. Foy went to the door of the house and yelled at appellant to get away from his car. Appellant then ran towards Foy with his shotgun, and Foy met appellant in Woodard's front yard. Foy and appellant stood facing each other a short distance apart, and appellant pointed his gun at Foy. Fearing for his life, Foy then ran back into Woodard's house. Appellant and Dorsey then fled in the blue Camino pickup truck. The police arrived at Woodard's house within minutes, and took Foy to the flea market where he identified appellant and Dorsey. Foy made a positive identification of appellant in court.

Within minutes of the other two robberies, appellant and Dorsey went to Edgar Thomas' (Thomas) house and parked in the driveway next to a car owned by Pursey Davis (Pursey). Thomas observed appellant get out of the blue Camino, and reach into the window of Pursey's car and unlock the door. Appellant then opened the door, got in, and started throwing tapes out from the inside of the car. Thomas and Pursey ran out and asked appellant what he was doing. Appellant raised his gun, and fired it at Thomas. The shot missed Thomas, and hit a mailbox. Thomas then ran into his house and called the police. Appellant and Dorsey drove off, and the police arrived minutes later. The police took Thomas to the flea market where he identified appellant and Dorsey. Thomas positively identified appellant as the shooter in court.

All of the victims identified appellant, the blue Camino, and appellant's shotgun at the flea market. The police recovered Rosas' electrical wire from the blue Camino.

In points of error one and two, appellant contends the evidence is legally and factually insufficient to support the jury's finding that appellant was guilty of aggravated robbery with a deadly weapon, either as a primary actor or a party. Appellant argues that none of the witnesses made a credible or reliable identification of appellant.

In reviewing the legal sufficiency of the evidence, we consider all the evidence, both State and defense, in the light most favorable to the verdict. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). In reviewing the sufficiency of the evidence in the light most favorable to the verdict or judgment, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex.Crim.App. 1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App. 1986). The jury is the exclusive judge of the facts, credibility of the witnesses, and the weight to be given to the evidence. *Chambers v. State,* 805 S.W.2d 459, 462 (Tex.Crim.App.1991). In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the

evidence, but acts only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). In making this determination, the jury can infer knowledge and intent from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982).

Under *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996), a court of appeals reviews the factual sufficiency of the evidence when properly raised after a determination that the evidence is legally sufficient. *Id.* In conducting a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* In conducting a factual sufficiency review, the court of appeals reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. *Id.* This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Id.* If the court of appeals reverses on factual sufficiency grounds, it must detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient. *Id.* The appropriate remedy on reversal is a remand for a new trial. *Id.*

A factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim.App.1997). This court's evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Id.* The appellate court maintains this deference to the fact findings, by finding fault only when "the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust." *Id.*

To determine the reliability of the identification of the suspect, the totality of the circumstances must be reviewed, including: (1) the opportunity to view; (2) the degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; and (5) the time between the crime and the confrontation. *Garza v. State*, 633 S.W.2d 508, 512–13 (Tex.Crim. App.1982). In this case, Foy had a good look at appellant when he first observed him from the window of Woodard's house. Foy then went to the front door of Woodard's house and yelled at appellant. Thereafter, Foy went outside, and appellant ran toward's Foy with the shotgun in his hands. Foy was facing appellant, and was standing just a few feet from appellant when appellant pointed his shotgun at Foy. Fearing his life, Foy then ran back into Woodard's house. Foy positively identified appellant at the flea market, and again in open court. *The other victims identified appellant as the gunman and shooter at the flea market.* The Rosas cousins could not positively identify appellant in open court, but Foy and Thomas had no trouble making a positive, in-court identification of appellant.

Appellant argues that the witnesses did not describe appellant and Dorsey accurately to the police. Appellant argues the witnesses did not mention appellant's ethnicity, color of complexion, skin, or eyes, or the presence and nature of any visible bodily markings, scars, or tatoos. Appellant asserts that Foy's description is "simply untruthful" as Foy did not "have the time, opportunity, or emotional wherewithal to get a good look at the gunman." Appellant's argument goes to the weight of the evidence and the credibility of the witnesses. The jury had before it all the relevant information concerning the identification of the appellant and it was the jury's duty to determine the credibility of their testimony and to decide the weight to be given to their testimony. *Garza*, 633

S.W.2d at 514. We find a rational jury could find appellant was Foy's attacker and that appellant was guilty of aggravated assault with a deadly weapon beyond a reasonable doubt.

Appellant further contends the same evidence is factually insufficient to sustain his conviction. What weight to give contradictory testimonial evidence is within the sole province of the trier of the fact, because it turns on an evaluation of credibility and demeanor. *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App. 1997). Accordingly, we must show deference to the jury's findings. *Id.* at 409. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Id.* at 410. In performing a factual sufficiency review, the courts of appeals are required to give deference to the jury verdict, examine *all* of the evidence impartially, and set aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain,* 958 S.W.2d at 410; *Clewis,* 922 S.W.2d at 129. After reviewing the record, we conclude the jury's finding that appellant was Foy's attacker is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's points of error one and two are overruled.

In point three, appellant contends the trial court judge erred in admitting evidence of extraneous offenses at the guilt-innocence phase of the trial because such evidence was not relevant. Prior to the presentation of the State's case, appellant moved to exclude any evidence of unadjudicated offenses because "by bringing these unadjudicated offenses it would prejudice the jury towards my client regarding the present offense of which he is on trial." The State responded that all three robberies were committed in a span of "20 minutes," in the same neighborhood, involving burglaries of automobiles, and using the same "MO" [method of operation]. The trial court overruled appellant's objection stating that the extraneous offenses were all part of the same criminal episode, and were admissible.

On appeal, appellant argues the extraneous offenses (the Rosas and Thomas robberies) were not admissible in evidence under rules 401 and 404(b), Texas Rules of Evidence, because they were not relevant. Appellant did not make a relevancy objection to the evidence in the trial court, and his only objection was that "these unadjudicated offenses would prejudice the jury." Assuming *arguendo* the objection was sufficient to preserve error as to relevancy, we find the trial court did not abuse its discretion in admitting evidence of the Rosas and Thomas robberies.

In this case, the State offered the evidence to show a common scheme or plan by appellant and to prove his identity. We review the trial court's determination of admissibility for purposes other than character conformity under an abuse of discretion standard. *Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990). Identity and the rebuttal of defenses are both valid purposes for admitting evidence under rule 404(b). *Lane,* 933 S.W.2d at 519. An extraneous offense may be admissible to show identity only when identity is an issue in the case. *Id.* The issue of identity may be raised by the defendant during cross-examination of the State's witnesses. *Id.*

In this case, appellant's counsel cross-examined Foy extensively to test his powers of observation, such as asking him who drove the blue El Camino away from the Woodard residence, and verifying that he only observed appellant for 45 seconds. In his brief, appellant asserts that Foy's description is "simply untruthful" as Foy did not "have the time, opportunity, or emotional wherewithal to get a good look at the gunman."

Raising the issue of identity does not automatically render extraneous offenses admissible. *Lane,* 933 S.W.2d at 519. To be admissible to show identity, an extraneous offense must be so similar to the offense charged that the offenses are

marked as the accused's handiwork. *Id.* In this case, appellant and Dorsey used the same method of operation for each crime. Dorsey drove the El Camino to the victims' houses, appellant or Dorsey burglarized the cars, appellant held the shotgun and/or shot at the victims, all the offenses were in the same residential area, and all the offenses occurred within an hour. In *Ransom v. State*, 503 S.W.2d 810, 813 (Tex.Crim.App.1974), the court of criminal appeals held the offenses to be sufficiently similar in that case when: (1) both offenses were robberies, (2) both offenses were committed at gunpoint, (3) the defendant was aided by a confederate, and (4) the offenses occurred three days apart. *Id.* In *Ransom*, the court of criminal appeals explained that sufficient similarity may be shown by proximity in time and place *or* by a common mode of committing the offenses. *Id.* In this case, the offenses were similar in that: (1) all three offenses were car burglaries that turned into robberies when the victims interrupted appellant and Dorsey, (2) all three robberies were committed at gunpoint, (4) the defendant was aided by a confederate, (4) the offenses occurred within the space of an hour, (5) the offenses were committed in the same residential area, and (6) appellant and Dorsey used the same procedure in each offense (Dorsey drove, appellant or Dorsey burglarized the cars, and appellant handled the shotgun and the victims). We hold that the proximity in time and place, the common mode of committing the offenses, and the circumstances surrounding the offenses are sufficiently similar for the extraneous offenses of the Rosas and Thomas robberies to be relevant to the issue of identity. *Lane*, 933 S.W.2d at 519; *Ransom*, 503 S.W.2d at 813. We overrule appellant's point of error three and affirm the judgment of the trial court.

Justice WITTIG concurs in the result only.