2000 SD 75

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Rodney Troy HOLZER, Defendant and Appellant.**

No. 21103.

Supreme Court of South Dakota.

Considered on Briefs March 22, 2000.

Decided June 7, 2000.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, for plaintiff and appellee.

Nichole Carper, Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

GILBERTSON, Justice

[¶ 1.] Defendant Rodney Troy Holzer (Holzer) appeals his conviction of first-degree attempted burglary, claiming the evidence is insufficient to support the conviction. He also appeals the circuit court's ruling admitting testimony concerning the condition of his clothing at the time of his arrest. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On December 17, 1998, Amanda Spronk, Amy Decker and two other young college women lived together in a house in Sioux Falls, South Dakota. On this particular evening, four of Spronk's girlfriends, Jessica DeVries, Jill Poppens, Sarah Rollinger and Katie Koerner, were spending the night at her house because the University of Sioux Falls dormitories were closed for Christmas break.

[¶ 3.] After spending the evening at another friend's house, the women returned to Spronk's house in two separate cars. The cars were parked on the street in front of the house. DeVries' car was left unlocked. The front and back doors to the house were unlocked at this time because Decker expected her boyfriend to stop by later.

[¶ 4.] While downstairs on the main floor of the house, Poppens noticed someone opening the outside screen door on the front porch. Poppens and Koerner went to the front door to see if anyone was there, and observed Holzer running across the front lawn. They went upstairs to tell Spronk and DeVries what they had seen. At that point, Spronk went outside to lock DeVries' car with the remote entry control. She came back into the house and locked both the front door and the back sliding glass door before heading back upstairs. The other women remained on the first floor.

[¶ 5.] A short time later, Poppens, Rollinger and Koerner noticed Holzer attempting to again get into the house. They told Spronk about this and when she looked out the window she saw a man standing in the driveway. Holzer was "showing himself and he was dancing around." In his brief, Holzer admits, while wearing a dildo and masturbating, he danced provocatively on the sidewalk in front of Spronk's house. Poppens called 911 to report what was happening. The women felt sure Holzer knew they were watching him. He "popped up" in front of the women and scared them while they were looking out the small windows of the front door. At this time the women could not identify the man because his face was covered. Holzer wore a blue t-shirt over his face. The shirt had holes cut out for his eyes and nose.

[¶ 6.] Holzer went to the back door and attempted to force open the sliding glass door, "slamming [it] back and forth real hard." The force was sufficient to pull the screws from the latch "out of their original position approximately about a half inch." There was also enough force exerted on the door to make the vertical blinds covering the glass swing back and forth. After the incident, the back sliding glass door could not be locked until it was repaired.

[¶ 7.] At some point, Decker was awakened and told about the man trying to get into the house. She made another 911 call.[1] The women remained upstairs and Decker stayed on the line until law enforcement arrived.

[¶ 8.] When Officer Dave Erickson arrived at the scene, he observed "a shadow of a person" near the back door of the house. A dog began barking at Officer Erickson, and Holzer ran off. Other law enforcement dispatched to the area observed Holzer running through the backyards in the neighborhood. Holzer did not stop upon command and was tackled a short distance from Spronk's house. When Holzer was rolled over onto his back, officers noticed a large, flesh colored dildo attached with nylons to his waist, extending through the unzipped and unsnapped open fly of his pants. Holzer's pants were very wet in the crotch area, specifically, "around the pocket areas and up towards the snap...." The rest of his pants were dry. Spronk's purse was found on the ground near Holzer. The blue t-shirt was found by him as well. Holzer's

---

1. The total elapsed duration of the two 911 calls is 8 minutes and 26 seconds. The record does not indicate how much time elapsed between the first and second 911 calls.

1975 Dodge pickup was found one block south from Spronk's house.

[¶ 9.] On December 22, 1998, Holzer was charged by indictment with attempted burglary in the first-degree (the house) (SDCL 22–32–1(3); SDCL 22–4–1), with the intent to commit sexual contact without consent, attempted burglary in the fourth-degree (the car) (SDCL 22–32–19) and indecent exposure (SDCL 22–24–1). The State also filed a Part II Habitual Offender Information, as Holzer had twice previously been convicted of burglary in the third-degree and once for grand theft. The State dismissed the indecent exposure charge prior to trial. Also prior to trial, Holzer filed a motion in limine to restrict testimony regarding the fact Holzer's pants were "wet" at the time of his arrest. This motion was denied and the circuit court allowed testimony regarding the condition of Holzer's pants. On April 13, 1999, Holzer was convicted by a jury on the counts of attempted burglary. The circuit court sentenced him to twenty-five years in the state penitentiary with three years suspended for the attempted first-degree burglary and ten years with one year suspended as to the count of attempted fourth-degree burglary. The sentences are to be served concurrently. Holzer now appeals his conviction and sentence for attempted first-degree burglary, raising the following issues for our consideration:

1. Whether the circuit court erred in denying Holzer's motion for judgment of acquittal.

2. Whether the circuit court abused its discretion in admitting testimony concerning the condition of Holzer's pants at the time of his arrest.

## STANDARD OF REVIEW

[¶ 10.] In reviewing the denial of a motion for judgment of acquittal, the ultimate question is whether the evidence was sufficient to sustain the convictions. *State v. Larson*, 1998 SD 80, ¶ 9, 582 N.W.2d 15, 17. We recently stated in *Larson:*

Our standard of review of a denial of a motion for judgment of acquittal is whether State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *State v. Abdo*, 518 N.W.2d 223, 227 (S.D.1994); *State v. Gallipo*, 460 N.W.2d 739, 742 (S.D.1990). In determining the sufficiency of the evidence to constitute the crime, the question is "whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt; in making this determination, the court will accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict." *State v. Heftel*, 513 N.W.2d 397, 399 (S.D.1994) (citations omitted).

*Id.* (citing *State v. Thompson*, 1997 SD 15, ¶ 34, 560 N.W.2d 535, 542–43 (citing *State v. McGill*, 536 N.W.2d 89, 91–92 (S.D. 1995))). In this review, we "will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." *State v. Buchholz*, 1999 SD 110, ¶ 33, 598 N.W.2d 899, 905 (citing *State v. Knecht*, 1997 SD 53, ¶ 22, 563 N.W.2d 413, 421).

[¶ 11.] The circuit court's evidentiary rulings are presumed correct and we review them under an abuse of discretion standard. *Larson*, 1998 SD 80, ¶ 10, 582 N.W.2d at 17 (citing *State v. Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (citing *State v. Oster*, 495 N.W.2d 305, 309 (S.D.1993))). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Id.* (citing *Goodroad*, 1997 SD 46,

¶ 9, 563 N.W.2d at 129 (citing *State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986))).

## ANALYSIS AND DECISION

**[¶ 12.] 1. Whether the circuit court erred in denying Holzer's motion for judgment of acquittal.**

[¶ 13.] Holzer argues his motion for judgment of acquittal should have been granted at the close of the evidence because the evidence was not sufficient to prove beyond a reasonable doubt he intended to commit sexual contact in the course of the attempted burglary. We do not agree.

[¶ 14.] Burglary is an unlawful entry accompanied by an intent to commit some other crime in the process; in this case, the crime was sexual contact. SDCL 22–32–1.[2] Holzer was apprehended before he actually entered the house and committed a crime therein. SDCL 22–4–1.[3] The State had to prove beyond a reasonable doubt Holzer intended to commit sexual contact on one or more of the women in Spronk's home.[4] The jury determined Holzer was guilty of attempted burglary with the intent to commit sexual contact.

[¶ 15.] The State may prove all elements of a crime, including intent, by circumstantial evidence. *State v. McGill*, 536 N.W.2d 89, 94 (S.D.1995) (citing *State v. Davi*, 504 N.W.2d 844, 856–57 (S.D. 1993); *State v. Ashker*, 412 N.W.2d 97, 105

(S.D.1987)). "The actor's 'state of mind' at the time of the offense may also be determined from his acts, conduct and inferences which are fairly deducible from the circumstances surrounding the offense." *Id.* (citing *State v. Huber*, 356 N.W.2d 468, 473 (S.D.1984)); *see also State v. Ring*, 554 N.W.2d 758, 760 (Minn. App.1997) (stating intent must generally be proved from the circumstances surrounding the defendant's acts). "[T]he proof of intent to commit a crime in connection with proof of burglary is always one that must rest on a permissible inference from the fact proved." *Ring*, 554 N.W.2d at 760.

[¶ 16.] Rarely does a sexual perpetrator announce his intentions prior to attempting such a crime. *People in Interest of W.Y.B.*, 515 N.W.2d 453, 455 (S.D.1994). In *W.Y.B.* this Court analyzed the concept of proof of specific intent concerning the crime of sexual contact, SDCL 22–22–7.1:

> First, we note that circumstantial evidence may often be the only way to prove intent. *North Dakota v. Lovejoy*, 464 N.W.2d 386, 389 (N.D.1990) (citing *North Dakota v. Huwe*, 413 N.W.2d 350, 355 (N.D.1987)). *See Nebraska v. Morrow*, 237 Neb. 653, 467 N.W.2d 63, 71 (1991) ("[I]ndependent evidence of specific intent is not required. The intent with which an act is committed is a mental process and may be inferred

First degree burglary is a Class 2 felony.

**2.** SDCL 22–32–1 provides:

> Any person who enters an occupied structure, with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, or remains in an occupied structure after forming the intent to commit any crime other than shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, is guilty of first degree burglary when:
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
> (2) The offender is armed with a dangerous weapon; or
> (3) The offense is committed in the nighttime.

**3.** SDCL 22–4–1 states, in pertinent part:

> Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof, is punishable where no provision is made by law for the punishment of such attempt, . . . .

**4.** SDCL 22–22–7.1 states in part:

> As used in this chapter, the term, sexual contact, means any touching, not amounting to rape, of the breasts of a female or the genitalia or anus of any person with the intent to arose or gratify the sexual desire of either party[.]

from the words and acts of the defendant and from the circumstances surrounding the incident.") (quoting *Nebraska v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156, 162 (1988)); *Minnesota v. Obasi*, 427 N.W.2d 736, 738 (Minn.App. 1988) ("Intent is a subjective state of mind and is established by reasonable inferences drawn from surrounding circumstances.") (citation omitted); *Bustamante v. Indiana*, 557 N.E.2d 1313, 1317–18 (Ind. 1990) (stating that elements of offenses may be established entirely by circumstantial evidence and logical inferences drawn therefrom); *Phillips v. Texas*, 597 S.W.2d 929, 936 (Tex.Crim.App. 1980) ("One's acts are generally reliable circumstantial evidence of his intent.") (citation omitted). Because the nature of intent is such that it is "rarely susceptible to direct proof, the fact finder may determine intent by such reasonable inferences and deductions as may be drawn from facts proved by evidence in accordance with common experience and observation." *Iowa v. Hilpipre*, 395 N.W.2d 899, 903 (Iowa App.1986) (citing *Iowa v. Serr*, 322 N.W.2d 96, 101 (Iowa App.1982)). On review, this court need only determine whether such inferences regarding intent support the judgment of the court beyond a reasonable doubt. *Bustamante*, 557 N.E.2d at 1318; *Lovejoy*, 464 N.W.2d at 389.

Also, the jury, as the exclusive judge of facts, credibility of the witnesses, and the weight to be given the evidence, may "infer knowledge and intent from the acts, words, and conduct of the accused." *Harvey v. State*, 3 S.W.3d 170, 174 (Tex. App.14th Dist.—Houston 1999) (citing *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim.App.1982)).

[¶ 17.] Given the facts and circumstances of this case, we determine there was sufficient evidence for the jury to find Holzer guilty of attempted burglary. Holzer admits he was at Spronk's house on the night in question. He admits he opened the front screen door, and forced the back sliding glass door hard enough to pull the latch and lock screws out of place, and rattle the vertical blinds. He also admits, while wearing a dildo attached to his waist and his pants unzipped and unsnapped, and masturbating, he danced provocatively on the sidewalk in front of the house. Holzer approached the front door and "popped up" in front of the small windows, scaring the women inside the house. He also took Spronk's purse from the car parked in front of the house. If his purpose was to steal the purse for monetary gain, he logically would have fled the crime scene with his proceeds. As he remained, a reasonable inference drawn from the theft of the purse is that Holzer wanted to obtain keys to enter the house. If his intent was to continue his thefts in the house, a house full of college girls provided questionable financial potential compared with some of the other homes in Sioux Falls. The fact it was obviously occupied also greatly increased his chances of being identified, and thus caught. However, his state of mind was such that upon failing to find house keys in the purse he continued to attempt to enter the occupied structure oblivious to the fact he was giving the occupants more than sufficient time to summon law enforcement. He did not attempt to flee until the police actually arrived and he was aware of their presence.

[¶ 18.] Holzer wore a blue t-shirt, with holes cut out for the eyes and nose, to cover his identity. He ran from the police when told to stop. Finally, when the police did apprehend him, the front of his pants were "wet" around the pocket and zipper area, supporting a legitimate inference that the wetness was caused by semen, indicating Holzer's intent in entering the house was for further sexual gratification.

[¶ 19.] Holzer essentially argues that his conduct in attempting to enter the house was harmless. However, if Holzer's intent was merely to expose himself to those six

women that night, after he had already accomplished this act outside the house why did he make so many strenuous and violent attempts to enter the house? He clearly had a desire to get inside the house based upon the repeated amount of force he exerted to pry open the back sliding glass door. He frightened the women sufficiently that they called 911 two times, and when officers arrived on the scene, they were "crying, hysterical, [and] very obviously shaken up and upset about the incident that occurred." The tape of the womens' 911 call illustrates not only how frightened these young women were, but also shows Holzer's repeated, persistent attempts to gain entry into the house, stopped only by police officers arriving on the scene.

[¶ 20.] Holzer's intent to commit sexual contact on these facts is not speculative or tenuous, but is a legitimate inference based upon all the facts available to the jury. *Compare, State v. Halverson*, 394 N.W.2d 886 (S.D.1986) (ruling that evidence was too tenuous to support a verdict beyond a reasonable doubt that the defendant intended to commit an assault in attempting to enter a residence).[5] The jury had more than sufficient evidence from which it could reasonably find Holzer guilty of the crime charged. The jury, as fact finders, heard all the evidence and determined the credibility of the witnesses and weighed their testimony. "It is not the proper function of this [C]ourt to resolve evidentiary conflicts to determine the credibility of witnesses or weigh the evidence." *State v. Christensen*, 1998 SD 75, ¶ 37, 582 N.W.2d 675, 682 (citing *State v. Abdo*, 518 N.W.2d 223, 227 (S.D.1994)) (quoting *State v. Battest*, 295 N.W.2d 739, 742 (S.D.1980)). The weight of the evidence is for the jury to evaluate. *Id.* (citing *State v. Ristau*, 290 N.W.2d 487, 490 (S.D.1980)). Moreover, the jury was given an instruction that the State must prove as an element of attempted first degree burglary, Holzer had the specific intent to commit the crime of sexual contact. The jury was also instructed on the difference between direct and circumstantial evidence. Jury instruction 9 states in relevant part:

> Where the case of the state rests substantially or entirely on circumstantial evidence, you are not permitted to find the defendant guilty of the crime charged unless the proved circumstances are not only consistent with the guilt of the defendant, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.
>
> If all the facts and circumstances shown can be reasonably accounted for upon any theory consistent with the innocence

---

5. Holzer's reliance upon *Halverson* is misplaced as authority for his argument that there was insufficient evidence to support a jury determination that Holzer entered the house with the intent to commit sexual contact. The two cases are factually distinguishable. While evidence was introduced of previous episodes between Halverson and other women, the sole facts underlying a claim of attempted burglary by attempted entry into a home for purposes of committing an assault on a woman were as follows:

> Sometime during the night on August 14, 1984 a young woman was awakened by someone prying and tearing on the bedroom screen window of the trailer home she occupied with another woman in Vermillion, South Dakota. The first woman was asleep in the darkened bedroom of the trailer. As she was awakened, she heard someone jump off a cement block that was under the window. The prowler then ran away. The women's trailer home was two trailer houses away from defendant's. Defendant was identified as a suspect by his fingerprints which were lifted off the window frame.

*Halverson*, 394 N.W.2d at 886–87. The repeated violent, strenuous attempts to gain entry to the house that occurred in this case were not present in *Halverson*. Likewise the acts committed by Halverson surrounding the unsuccessful attempted entry do not contain the repeated sexual acts which are admitted by Holzer.

of the defendant, the jury must acquit the defendant.

We assume the jury followed these instructions. *West v. United States,* 359 F.2d 50, 53 (8th Cir.1966) (citing *Beck v. United States,* 298 F.2d 622 (9th Cir. 1962)); *see also United States v. Stone,* 9 F.3d 934, 938 (11th Cir.1993) (quoting *Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 853 n. 6, 74 L.Ed.2d 646 n. 6 (1983) ("The " 'crucial assumption' underlying the system of trial by jury 'is that juries will follow the instructions given them by the trial judge." ' ")). We can also assume the "jury possessed ordinary intelligence and ordinary ability to interpret the facts and understand the instructions." *West,* 359 F.2d at 54 (citing *Orton v. United States,* 221 F.2d 632 (4th Cir.1955)).

[¶ 21.] Considering all reasonable inferences and the record in a light most favorable to the jury's verdict, we

determine the evidence was sufficient to constitute attempted burglary in the first-degree. *State v. Rhines,* 1996 SD 55, ¶ 157, 548 N.W.2d 415, 451 (citing *State v. Buller,* 484 N.W.2d 883, 889 (S.D.1992), *cert. denied,* 506 U.S. 887, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992)) (citing *Ashker,* 412 N.W.2d at 105). This Court also views the facts in a light most favorable to the State, giving the State the benefit of all reasonable inferences. *Halverson,* 394 N.W.2d at 888. The circumstances shown – persistent attempts to make a forced entry after Holzer had exposed himself and masturbated in the front yard, while concealing his identity – exclude any rational inference that Holzer had a noncriminal and non-sexual intent in attempting entry into the house. The trial court properly denied Holzer's motion for acquittal.

[¶ 22.] Affirmed.[6]

6. Twelve jurors were empanelled to try this case. After hearing and considering all the evidence and the reasonable inferences drawn therefrom and being properly instructed on the law, not one of them concluded there was a reasonable doubt of the defendant's specific intentions or guilt. The dissent fails to give the jury its time honored deference as the "exclusive" trier of fact, pursuant to SDCL 23A–25–3, who had the opportunity to see and hear the proceedings and instead the dissent engages in a selective de novo review of the case. *See Harvey,* 3 S.W.3d at 173 (stating "[t]he jury is the exclusive judge of the facts, credibility of the witnesses, and the weight to be given to the evidence."). A de novo standard of review is inappropriate in this case, because a court in a sufficiency of the evidence case is "required to review all inferences in favor of the [jury] verdict, thus making deferential review appropriate," instead of a de novo review which applies only to decisions made by the trial court. *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163, 174 n. 5 (1995) (interpreting *Jackson v. Virginia,* 443 U.S. 307, 324–26, 99 S.Ct. 2781, 2792–93, 61 L.Ed.2d 560, 577–78 (1979).)

By engaging in its subjective review of the facts and evidence in this case, the dissent is acting as a "thirteenth juror" when it reaches its conclusion that Holzer, a "weirdo, is so weird any speculation about his unknown intent is just that, pure speculation." Concluding that the defendant is a "weirdo" is not the point of a criminal trial, nor is it a legal defense to set aside the jury's determination

of guilt. "[C]ourts 'are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable.' " *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We agree with the *Guthrie* court's statement in interpreting the United States Supreme Court's decision in *Jackson* as establishing a deferential standard of review in cases where the sufficiency of the evidence to support a jury verdict is challenged:

Under the *Jackson* standard, when reviewing a conviction, we may accept any adequate evidence, including circumstantial evidence, as support for the conviction. It is possible that we, as an appellate court, may have reached a different result if we had sat as jurors. However, under *Jackson,* it does not matter how we might have interpreted or weighed the evidence. Our function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

461 S.E.2d at 174; *see also Harvey,* 3 S.W.3d at 174 (stating "[a] factual sufficiency review must be appropriately deferential so as to

**[¶ 23.] 2. Whether the circuit court abused its discretion in admitting testimony concerning the condition of Holzer's pants at the time of his arrest.**

[¶ 24.] Holzer made a pretrial motion in limine, requesting the circuit court to prevent the State from making any reference to the condition of his pants at the time of arrest. Holzer's basis for this motion was that the pants had not been taken into evidence or tested in any way to support a suggestion by the State that the pants were wet because of semen. The court determined the matter would be dealt with when it came up at trial.

[¶ 25.] At trial, Holzer renewed his motion, arguing the pants had never been preserved as evidence and not tested. Finally, Holzer argued the prejudicial impact of Officer Webb's testimony concerning the pants outweighed any probative value it might have. The circuit court heard the officer's testimony outside the presence of the jury, and denied Holzer's motion.

[¶ 26.] Officer Webb testified at trial about the wetness he observed on Holzer's pants when he tackled him to the ground, after Holzer ignored his command to stop. The following testimony constitutes the entire direct testimony regarding Holzer's "wet" pants:

Q: Did you notice anything else unusual about the defendant?

A: His pants were unzipped and unsnapped.

Q: Anything else unusual about the defendant?

A: The pants around the groin area were also wet.

Q: Was there frost on the ground that night?

A: Yes, there was.

Q: Did the wetness around his crotch area appear to you to be caused by the frost on the grass?

A: No, it didn't. They were extremely wet to the touch.

Q: Were the rest of his jeans or pants wet?

A: Not that I recall. I recall around the pocket areas and up towards the snap that were extremely wet.

It is apparent from the above testimony that the State never asked Officer Webb's opinion of why Holzer's pants were wet. We will never know what the jury may have inferred from Holzer's wet pants, but if it did infer the wetness was caused by Holzer's semen, it would be a legitimate inference drawn from the evidence. Again, the jury determines the facts and weight of the evidence. *Christensen,* 1998 SD 75, ¶ 37, 582 N.W.2d at 682.

[¶ 27.] Relevant evidence is evidence having any tendency to make the existence of any material fact more or less probable. SDCL 19–12–1. Relevant evidence is inadmissible if unfairly prejudicial. SDCL 19–12–3. The circuit court did the required balancing on the record as to this evidence and found it more probative than prejudicial. *Knecht,* 1997 SD 53, ¶ 12, 563 N.W.2d at 419 (citing *State v. McDonald,* 500 N.W.2d 243, 246 (S.D.1993)). The standard is not whether the evidence was prejudicial but whether it was unfairly prejudicial. *Id.* "Unfair prejudice means evidence that has the capacity to persuade by illegitimate means." *Id.* (citing *State v. Brings Plenty,* 459 N.W.2d 390, 399 (S.D.1990)) (citing *State v. Holland,* 346 N.W.2d 302 (S.D.1984)). We do not find any unfair prejudice to Holzer in this case, as the testimony presented to the jury was clearly limited to what Officer

avoid the appellate court's substituting its own judgment for that of the fact finder."); *Jacobs–Cathey Co. v. Cockrum,* 947 S.W.2d 288, 295 (Tex.App.—Waco 1997) (concluding "the court on appeal is not to retry the case or otherwise substitute its judgment or opin-

ion for that of the trier of fact and that only when the judgment is *clearly* wrong and unjust, after giving due deference to the jury's determinations of the facts, may the reviewing court reverse the judgment.") (emphasis added).

Webb observed when he arrested Holzer, and nothing more.

[¶ 28.] Moreover, the State had the burden to prove Holzer possessed the intent to commit sexual contact upon entry to the house. The location and degree of wetness of Holzer's pants is a relevant fact to his intent to "arouse or gratify his sexual desire." SDCL 22–22–7.1. While the "wetness" of the pants alone does not establish Holzer's criminal intent, it is circumstantial evidence that supports that intent.

[¶ 29.] Finally, Holzer had every opportunity to cross-examine Officer Webb on the witness stand, before the jury, to suggest possible explanations for the wetness. In fact, while cross-examining Officer Webb, Holzer's counsel suggested that the wetness on his pants could have been caused by frost on the ground:

Q: You have him on the ground. He's face down in the backyard of a place where there's frost on the ground?

A: Yes.

Q: You have your knee on his buttocks area to keep him secure on the ground; is that correct?

\* \* \* \*

Q: It's your testimony in the whole process from him running away from when you tackled him to the ground and I assume sliding, the only part of his pants that were wet was the pocket area?

A: Not noticeably wet; that's correct.

Holzer's counsel also brought out the fact that the pants had not been tested in any way to determine the cause of the wetness. Thus, the jury was able to hear all of this testimony, yet still found Holzer guilty of attempted burglary. The probative value of this evidence put on by the State to prove, beyond a reasonable doubt, that Holzer did have intent to commit sexual contact upon entering the Spronk house was not outweighed by any unfair prejudice to Holzer. This is true especially considering the victims' testimony describing Holzer's actions, and the fact that Holzer did not offer any contradicting testimony. Holzer has failed to show an abuse of discretion by the circuit court.

[¶ 30.] Affirmed.

[¶ 31.] MILLER, Chief Justice and KONENKAMP, Justice, concur.

[¶ 32.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 33.] The majority opinion strains in Issue 1 to conclude that the only legitimate inference is that Holzer intended to commit sexual contact on one or more of the women in Spronk's home. Nonsense. This weirdo is so weird any speculation about his unknown intent is just that, pure speculation. The evidence presented at trial was "too tenuous to support a verdict beyond a reasonable doubt" that Holzer, who was attempting to enter the Spronk residence, intended to commit sexual contact without consent once inside the home. *State v. Halverson*, 394 N.W.2d 886 (S.D. 1986).

[¶ 34.] The majority opinion unsuccessfully attempts to distinguish the *Halverson* case from this case. While these two cases are not factually identical, the issues are certainly similar. Halverson attempted to enter the home of two women at night by prying and tearing on a bedroom screen window.[7] He admitted that he was a "window-peeper" and tampered with the screen to improve visibility, but did not intend to gain entry into the trailer house. Halverson was convicted of attempted burglary with the intent to commit assault therein. In reversing this conviction, this court stated:

> The determination of the sufficiency of the evidence to submit a case to the fact

---

7. Ten days after this incident, Halverson was again observed window peeking and attempting to break into the apartment of three other women. He was found guilty of window peeking for this offense. *Id.* at 887.

finder 'may depend upon the difference between pure speculation and legitimate inference from proven facts.'

*Id.* at 888 (citations omitted).

[¶ 35.] We explained that while the evidence clearly showed that Halverson attempted to enter the home in the nighttime, "the evidence is purely speculative on whether defendant's intent in attempting to do so was to commit an assault. . . ." *Id.* In reversing, we rejected the State's argument that Halverson would have "most likely" committed assault: "[t]his evidence, while it might permit conjecture and speculation as to what was 'most likely' to occur, is too tenuous to support a verdict beyond a reasonable doubt that [Halverson] intended to commit an assault in attempting to enter the trailer." *Id.* Therefore, we held that the evidence was not "sufficiently compelling or persuasive to support a finding beyond a reasonable doubt that defendant intended to commit an assault in the course of the attempted break-in." [8] *Id.*

[¶ 36.] Similarly, Holzer attempted to break-in to the Spronk residence during the nighttime by forcibly pulling on the sliding glass door. Like the *Halverson* case, this is the only legitimate inference that can be made. However, the majority opinion strains to persuade that the only legitimate inference is that Holzer intended to commit sexual contact on one or more of the women in Spronk's home. For example, the majority opinion claims:

> If his purpose was to steal the purse for monetary gain, he logically would have fled the crime scene with his proceeds. As he remained, a reasonable inference drawn from the theft of the purse is that Holzer wanted to obtain keys to enter the house. If his intent was to continue his thefts in the house, a house full of

college girls provided questionable financial potential compared with some of the other homes in Sioux Falls. . . .

> Holzer wore a blue t-shirt, with holes cut out for the eyes and nose, to cover his identity. He ran from the police when told to stop. Finally, when the police did apprehend him, the front of his pants were 'wet' around the pocket and zipper area, supporting a legitimate inference that the wetness was caused by semen, *indicating Holzer's intent in entering the house was for further sexual gratification.*

(emphasis added).

[¶ 37.] It is obvious that the majority opinion incorrectly stacks inference upon inference to conclude that specific intent was established. *See State v. Burton,* 235 Kan. 472, 681 P.2d 646, 651–52 (1984) (stating that "presumptions and inferences may be drawn only from facts established and presumption may not rest upon presumption or inference on inference." (citations omitted)). Setting aside the incorrect stacking of inferences, the inferences themselves could only have arisen if the jury, or majority opinion, engaged in conjecture and speculation. We have previously determined that regardless whether the evidence is direct or circumstantial, it must raise a *legitimate* inference of guilt. In other words, it must do more than create conjecture, speculation or suspicion.

[¶ 38.] Holzer's conduct does not provide substantial evidence to support his conviction for attempted burglary with the intent to commit sexual contact. It is pure speculation to conclude that Holzer was satisfied by the minimal amount he took from the purse. It is also pure speculation to conclude that the college girls had nothing of value to steal from their home merely

8. The majority opinion's claim about the thirteenth juror is nonsense. We are only suggesting that this court do exactly what this court did in *Halverson.* That is, determine that the evidence was more speculation than sufficient and reverse and remand. The simple fact is that the State overcharged the

defendant considering the evidence they were able to produce. *See Halverson,* 394 N.W.2d at 888 (stating that "[t]he determination of the sufficiency of the evidence . . . 'may depend upon the difference between pure speculation and legitimate inference from proven facts.' ").

because they were college girls. Furthermore, the fact that he stole a purse does not give rise to a legitimate inference that he wanted to commit sexual contact without consent. It is also pure speculation to conclude that Holzer had the intent to commit sexual contact once inside the Spronk home. After all, did he not sexually gratify himself before the police arrived? If the prior purse stealing excludes intent to steal, why does not his prior ejaculation exclude intent to commit sexual contact? The attempt at logic in the majority opinion defies logic.

[¶ 39.] Additionally, Holzer did not have any weapons in his possession that night. He was attempting to enter a home where six college girls were temporarily living. Is it reasonable to infer that six college women could not protect themselves against Holzer, who was unarmed. Furthermore, if he intended to commit sexual contact, why did he not approach, touch or grab Spronk when she left the security of the house to lock her friend's car? Nobody knows – it is pure speculation.

[¶ 40.] While reasonable inferences may be drawn from the facts and conditions shown, they cannot be drawn from facts and conditions "merely imagined or assumed." *Burton,* 681 P.2d at 652 (citation omitted). The foundation for this conviction is an incorrect stacking of inferences and assumptions. Furthermore, the circumstantial evidence reveals that "it is just as likely, if not more likely" that a reasonable hypothesis of unknown intent best explains Holzer's weird conduct. Therefore, the evidence cannot be said to rise to the level of proof beyond a reasonable doubt.

9. But for this speculation requiring reversal, I would agree with the majority opinion's determination in Issue 2 that the trial court did not abuse its discretion in allowing the State to refer to the fact that Holzer's pants were

[¶ 41.] In summary, three things are clear:

1) There simply is *no* evidence that this weirdo intended physical contact with anyone;

2) The evidence is that he was into theft, scare or shock tactics and *not* physical contact; and

3) He was charged with a specific intent crime, *not* a general intent crime, and the State did *not* prove either.

All the State proved as to intent is pure speculation and, unless we overrule *Halverson,* that is *not* enough.

[¶ 42.] The State's evidence of Holzer's specific intent at the time of entry "required the jury 'to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation' and therefore was insufficient as a matter of law to convict [Holzer] of the burglary charge." *Johnson v. United States,* 613 A.2d 888, 906 (D.C.Ct.App. 1992) (citations omitted). Therefore, the trial court abused its discretion in failing to grant Holzer's motion for Judgment of Acquittal on the basis of insufficient evidence and his conviction should be reversed.[9]

[¶ 43.] AMUNDSON, Justice, joins this dissent.

wet in the zipper area at the time of his arrest.