Affirmed and Memorandum Opinion filed February 21, 2008








Affirmed and Memorandum Opinion filed February 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00498-CR

____________

 

KENDRICK PAUL INA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1041278

 



 

M E M O R A N D U M   O P I N I O N

Appellant Kendrick Paul Ina challenges his conviction for
aggravated robbery, asserting that the evidence is legally and factually
insufficient to support the conviction and that the trial court erred in
admitting extraneous-offense evidence and in denying his motion for mistrial
based on improper argument.  We affirm.  

 

 








I.  Factual and Procedural
Background

On August 5, 2004, a man entered a convenience store at
approximately 10:20 a.m., pulled out a gun, and demanded money.  The
convenience store clerk and store owner, Jaffarali Prasla, complied by pulling
out the cash drawer from the register and placing it on the counter.  The man
took the money from the cash drawer and demanded more, so Prasla emptied his
pockets and gave his wallet to the robber.  The man then walked around the
counter and located a wooden drawer underneath the counter.  The drawer contained
more money.  The intruder told Prasla to put the money in a bag, demanded
Newport brand cigarettes, ordered Prasla to lie face-down on the floor, and
then left the store.

Houston police officers arrived on the scene and viewed a
surveillance videotape of the robbery.  Prasla described the robber as a black
man wearing black sunglasses and a baseball cap.  Prasla gave height and weight
estimates of the robber, but he was unable to associate a vehicle with the
robbery.  A Houston police officer printed a still photo from the surveillance
video footage and showed it to two managers at a nearby apartment complex.  The
two managers gave the officer a tenant=s name (not
appellant=s name), but upon arriving at that individual=s apartment, the
officer eliminated him as a suspect based on his physical appearance.  This man=s photo was placed
in a lineup and shown to Prasla, who did not identify the man as the robber. 
Several days later, Prasla called police after seeing a man resembling the
robber driving away from the store in a brown and black Chevrolet pick-up
truck.  However, after viewing new surveillance footage, the responding
officers and Prasla concluded that it was a different man.








The convenience store was robbed a second time at
approximately 11:50 a.m. on October 22, 2004, by a black male wearing a
baseball cap and sunglasses.  The man approached Prasla with a gun and demanded
money, took the money from the wooden drawer underneath the counter, told
Prasla to put the money in a bag, and ordered Prasla to lie face-down on the
floor.  The store=s security camera captured the event on  a
surveillance videotape.  Prasla connected the robber with a gold Honda
automobile and gave a licence plate number, but police were unable to locate
the vehicle.

Prasla sold the convenience store at the end of October 2004,
and the store was robbed again while under new ownership at approximately 1:50
p.m. on November 30, 2004.  This robber matched the same physical description,
wore sunglasses and a black baseball cap with orange lettering, told the clerk
to get a bag for the money, looked under the counter for the wooden drawer of
cash, and demanded a carton of Newport cigarettes.  Again, the incident was
recorded by the store=s video surveillance equipment. 

The police received a tip directing them to a vehicle owned
by appellant.  The police located appellant, obtained his consent to search the
vehicle, and recovered a black baseball cap with orange lettering and a pair of
sunglasses.  Officers then compiled a video line-up using appellant and four
other individuals, from which Prasla selected appellant as the robber, stating
that he was 75% certain about his identification.  However, upon seeing
appellant in person, Prasla stated that he was 100% certain about his
identification.  

Appellant was apprehended and charged by indictment with
the offense of aggravated robbery for the August 5, 2004 incident.  The
indictment alleged that appellant used a deadly weapon in the course of
committing a robbery.  Appellant pleaded Anot guilty.@  The jury found
him guilty as charged and assessed punishment at forty years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.

II.  Issues Presented

Appellant presents the following issues for review:

(1)     Is the evidence legally and factually
sufficient to support appellant=s conviction for aggravated robbery?[1]








(2)     Did the trial court err in admitting
extraneous-offense evidence of the two subsequent robberies, including
surveillance videotapes of the October 22nd and November 30th incidents, the
baseball cap, the sunglasses, and still photographs and the video from the
police line-up?

(3)     Did the trial court err in denying a
mistrial on the basis of the State=s  improper argument?

III.  Analysis

A.      Is the
evidence legally and factually sufficient to support appellant=s conviction for
aggravated robbery?     

In his second and third issues, appellant asserts that the
evidence is legally and factually insufficient to support his conviction for
aggravated robbery.  A person commits a robbery if in the course of committing
a theft, and Awith intent to obtain or maintain control of the
property, he:  (1) intentionally, knowingly, or recklessly causes bodily injury
to another; or (2) intentionally or knowingly threatens or places another in
fear of imminent bodily injury or death.@  Tex. Penal Code Ann. ' 29.02 (Vernon
2003).  The offense becomes aggravated robbery if the person committing the
robbery uses a deadly weapon during the commission of the robbery.  Id. ' 29.03 (Vernon
2003).  








In evaluating a legal‑sufficiency challenge, we view
the evidence in the light most favorable to the verdict. Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether
we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether we
are able to say, with some objective basis in the record, that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 414B17 (Tex. Crim. App. 2006).  It is not enough that this court
harbor a subjective level of reasonable doubt to overturn a conviction that is
founded on legally sufficient evidence, and this court cannot declare that a
conflict in the evidence justifies a new trial simply because it disagrees with
the jury=s resolution of that conflict.  Id.
at 417.  If this court determines the evidence is factually insufficient, it
must explain in exactly what way it perceives the conflicting evidence greatly
to preponderate against conviction.  Id. at 414B17.  Our evaluation should not intrude
upon the fact finder=s role as the sole judge of the weight and credibility given
to any witness=s testimony.  See Fuentes, 991 S.W.2d at 271.  In conducting a
factual‑sufficiency review, we discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).








In the present case, the evidence is undisputed that a man
wearing a baseball cap and sunglasses robbed the convenience store on August 5,
2004.  Video surveillance recorded the incident, and still photos were taken
from that videotape.  The same store was robbed on two other occasions under
very similar circumstances, and evidence of those extraneous offenses was
admitted to assist the jury in determining the identity of the robber in the
August 5, 2004 incident.  Police obtained appellant=s consent to
search his vehicle and recovered a baseball cap and sunglasses.  The
convenience store owner tentatively identified appellant as the robber from a
video line up, and reaffirmed his identification in person at trial.  The
prosecution presented various witnesses, including the former owner of the
convenience store who was robbed at gunpoint on August 5, 2004, the current
owner of the convenience store, and the officer who searched appellant=s car.  

The jury, being the sole judge of the credibility of the
witnesses, could choose to believe or not believe the witnesses at all, or
choose to believe or not believe any portion of their testimony.  Rojas v.
State, 171 S.W.3d 442, 445B46 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  After reviewing the record, we
conclude that a rational trier of fact could conclude beyond a reasonable doubt
that appellant committed the offense with which he was charged.  Likewise,
after reviewing the evidence in a neutral light, we conclude that the verdict
is not against the great weight and preponderance of the evidence and is not
clearly wrong or unjust. See Watson, 204 S.W.3d at 414B17.  Accordingly,
the evidence is legally and factually sufficient to support appellant=s conviction.  We
overrule appellant=s second and third issues.  

B.      Did the trial court err in
admitting extraneous-offense evidence of the two subsequent robberies?

Appellant complains that the trial court erred in admitting
extraneous-offense evidence of the robberies that occurred on October 22, 2004
and November 30, 2004.  Specifically, appellant contends the trial court should
have excluded from evidence the store=s surveillance
videotapes of those incidents as well as the baseball cap, sunglasses, and the
video and photos from the line-up as inadmissible extraneous-offense evidence
under Texas Rules of Evidence 404(b) and 403.  See Tex. R. Evid. 403 (excluding relevant
evidence if its probative value is substantially outweighed by the danger of
unfair prejudice); Tex. R. Evid.
404(b) (permitting evidence of other crimes, wrongs, or acts if relevant apart
from conformity with character). 








A trial court=s ruling on
admissibility of extraneous-offense evidence is reviewed under an
abuse-of-discretion standard.  Moses v. State, 105 S.W.3d 622, 627 (Tex.
Crim. App. 2003).  If the trial court=s ruling falls
within the zone of reasonable disagreement, we must affirm.  Id.  A
determination of whether the extraneous-offense evidence holds relevance apart
from the character conformity, as required by Rule 404(b), is a question for
the trial court.  Id.; see Tex.
R. Evid. 404(b).  A trial court=s decision in this
matter is owed no less deference than any other relevancy decision.  Moses,
105 S.W.3d at 627.

Did the trial court err in
admitting the extraneous offense evidence in violation of Texas Rule of
Evidence 404(b)?








Texas Rule of Evidence  404(b) permits relevant
extraneous-offense evidence of other crimes, wrongs, or acts if the evidence
holds relevance apart from proving that the defendant acted in conformity with
bad character.  Tex. R. Evid.
404(b); Moses, 105 S.W.3d at 626.  A trial court violates Rule 404(b)
if, despite a timely and specific objection, it admits evidence of other
crimes, wrongs, or acts that is relevant to nothing except an attempt to show
the defendant acted in conformity with a bad character.  Montgomery v. State,
810 S.W.2d 372, 386B87 (Tex. Crim. App. 1991) (op. on reh=g). 
Extraneous-offense evidence may be admitted for some purposes apart from
relevance to character conformity, including proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.  Tex. R. Evid. 404(b); Montgomery,
810 S.W.2d at 387B88.  However, to introduce evidence for a
purpose other than character conformity, or any other purpose permitted under
404(b), does not alone make the evidence admissible.  Rankin v. State,
974 S.W.2d 707, 709 (Tex. Crim. App. 1996).  The extraneous-offense evidence
also must be relevant to a Afact of consequence@ in the case.  Id.;
Webb v. State, 36 S.W.3d 164, 180 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d) (en banc); see Tex. R. Evid. 401 (concerning
relevance).  Evidence is relevant if it has Aany tendency to
make the existence of any fact that is of consequence to the determination of
the action more or less probable than it would be without the evidence.@  Tex. R. Evid. 401; Montgomery,
810 S.W.2d at 375B76 (noting that relevant evidence needs
only to Atend@ to affect some
probability or would logically influence the issue). 

Extraneous-offense evidence may be admissible to show
identity when identity is at issue, as in this case.  See Lane v. State,
933 S.W.2d 504, 519 (Tex. Crim. App. 1996).  However, raising the issue of
identity does not automatically render evidence of an extraneous offense
admissible.  Id.  For such evidence to be admissible, the extraneous
offense must be so similar to the charged offense that both are marked as
handiwork of the accused.  Id.  Sufficient similarity may be shown by
proximity in time and place or by a common mode of committing the offenses.  Harvey
v. State, 3 S.W.3d 170, 175B76 (Tex. App.BHouston[14th
Dist.] 1999, pet. ref=d).

In the present case, identity was an issue.  See Webb,
36 S.W.3d at 180 (recognizing that extraneous-offense evidence must be a Afact of
consequence@).  Appellant was charged only with the robbery that
occurred on August 5, 2004.  However, the same convenience store was robbed
three times in 2004:  August 5, October 22, and November 30.  Surveillance
equipment recorded each incident.  The baseball cap, found in appellant=s car, connects
him to the November 30th incident; and the sunglasses connect appellant to the
November 30th and August 5th incidents.  Appellant=s physical
appearance links him to all three incidents. 








Moreover, the similar methods used in each robbery suggest
that the same person might be responsible.  See Lane, 933 S.W.2d
at 519; Harvey, 3 S.W.3d at 175B76.  The two
extraneous offenses share many similar characteristics with the August 5th
offense:  the same store was robbed during the daytime by a black male with
similar physical features, characteristics, and accessories.  See Harvey,
3 S.W.3d at 175B76 (noting similarity in proximity in time
and place suggest identity).  Furthermore, in each incident, the robber held
the cashier at gunpoint, ordered the cashier to put money in a bag, demanded
Newport cigarettes, and ordered the cashier to lay face-down.  See id. (demonstrating
similarity through common mode of committing the offenses).  In the first
robbery, when the robber demanded more money, Prasla revealed a wooden drawer
under the counter that contained more money.  This same drawer was accessed
during the subsequent robberies.  The proximity in time and place, the common
mode of committing the offenses, and the circumstances surrounding the offenses
are all sufficiently similar for the extraneous-offense evidence to be relevant
to the issue of identity.  See Lane, 933 S.W.2d at 519; Harvey,
3 S.W.3d at 175B76.  

Because identity was an issue raised in this case, the
extraneous-offense evidence of the subsequent robberies in October and November
was relevant apart from proving appellant=s action in
conformity therewith, and consequently that evidence is admissible
extraneous-offense evidence under 404(b).  Tex.
R. Evid. 404(b); Montgomery, 810 S.W.2d at 387B88.  For this
reason, the trial court did not err in admitting the extraneous-offense
evidence over appellant=s 404(b) objections.  See Moses,
105 S.W.3d at 627; Montgomery, 810 S.W.2d at 386B87. 

Did the trial court err in
admitting the extraneous offense evidence in violation of Texas Rule of
Evidence 403?

Even if relevant evidence is admissible under 404(b) for a
permissible purpose not related to character conformity, a trial court should
exclude it if its probative value is substantially outweighed by the danger of
unfair prejudice under Rule 403.  Tex.
R. Evid. 403 (excluding relevant evidence if its probative value is
substantially outweighed by the danger of unfair prejudice); Moses, 105
S.W.3d at 626.  Because we review a trial court=s decision to
admit evidence over a 403 objection under an abuse-of-discretion standard, we
will reverse a trial court=s decision only if the danger of unfair
prejudice substantially outweighs the probative value of the evidence.  Montgomery,
810 S.W.2d at 390, 392B93. 








Under a Rule 403 analysis, a reviewing court should balance
the following factors to determine whether prejudice outweighs the probative
value of an extraneous offense: (1) the strength of the evidence in making a
fact more or less probable, (2) the potential of the extraneous-offense
evidence to impress the jury in some irrational but indelible way, (3) the
amount of time the proponent needs to develop the evidence, and (4) the
strength of the proponent=s need for this evidence to prove a fact
of consequence.  Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim.
App. 1999).  When, as in this case, the record is silent as to whether the
trial court made its findings by balancing these factors, it will be presumed
that the trial court conducted the balancing test.  See Williams v. State,
958 S.W.2d 186, 195B96 (Tex. Crim. App. 1997).

On cross-examination, appellant consistently contested his
identity in the August 5th robbery.  First, the extraneous-offense evidence
holds inherent probative value in making an important fact of consequence, the
appellant=s identity, more or less probable that he was the
person who committed the robbery on August 5th.  See Montgomery, 810
S.W.2d at 389B90. Moreover, the evidence of similar crimes is
probative because of the distinguishing characteristics common to all three
offenses.  See Beets v. State, 767 S.W.2d 711, 740B41 (Tex. Crim.
App. 1987) (explaining that when identity is disputed, probative value
outweighs a prejudicial effect to admit extraneous-offense evidence upon a
showing of distinguishing characteristics, common to all offenses, that earmark
a defendant=s handiwork as a Asignature@).  

Next, though the danger of unfair prejudice lies in the
jury=s potential to be
impressed in some irrational but indelible way, the evidence was offered to
show appellant=s identity and not for the purpose of injecting
improper character evidence.  See Mozon, 991 S.W.2d at 847.  The trial
court=s decision to
admit this evidence was within the zone of reasonable disagreement.  See
Moses, 105 S.W.3d at 627.  Furthermore, as the third factor suggests, the
State did not spend much time developing the evidence.  See Mozon,
991 S.W.2d at 847.  The time the State devoted to the task was not so
great that it diverted from the development of evidence of the August 5th
offense.  See Montgomery, 810 S.W.2d at 390.








Finally, the extent to which the State needed the
extraneous-offense evidence to prove identity depends on a combination of: (1)
the amount of other circumstantial evidence tending to show identity; (2) the
strength of the evidence in showing the person committed the extraneous
offense; and (3) how closely the extraneous-offense evidence matches the crime
so as to establish the culprit=s signature.  See generally Montgomery,
810 S.W.2d at 390; Albrecht v. State, 486 S.W.2d 97, 100, 102 (Tex.
Crim. App. 1972).  The clerks on duty at the time of the robberies were the
only eyewitnesses; thus, the State had some need for the extraneous-offense
evidence to prove appellant=s identity in committing the August 5th
robbery based on the common characteristics of the three incidents.  Montgomery,
810 S.W.2d at 390; Albrecht, 486 S.W.2d at 100, 102.  Furthermore, based
on the same physical characteristics and methods in the three robberies, the extraneous-offense
evidence appears to strongly establish appellant=s signature in his
handiwork.  See generally Montgomery, 810 S.W.2d at 390; Albrecht,
486 S.W.2d at 100, 102.  

We conclude that the trial court did not abuse its
discretion in determining that the probative value of the extraneous-offense
evidence substantially outweighed the danger of unfair prejudice.  Thus, the
trial court did not err in admitting the evidence despite appellant=s Rule 403
objections.  See Tex. R. Evid.
403; Moses, 105 S.W.3d 622.  Accordingly, we overrule appellant=s first issue.

C.      Did the trial court err in
denying a mistrial on the basis of the State=s improper argument?

In his fourth issue, appellant complains that the trial
court erred in denying his request for a mistrial based on the following
exchange during the State=s closing argument:

PROSECUTION: All right.  And if you=ll notice the robberies stopped when Mr. Ina was arrested.

DEFENSE: Objection Your Honor.  There is no evidence whatsoever to
sustain - - to support that.  Objection.

THE COURT: Well, I instruct the jury to disregard.








DEFENSE: And I would ask for a mistrial based on the obvious
prejudicial nature of the comments of the prosecutor.

THE COURT: Denied.

We review a trial court=s ruling on
mistrial under an abuse-of-discretion standard.  Simpson v. State, 119
S.W.3d 262, 272 (Tex. Crim. App. 2003).  A mistrial is an extreme remedial
device for prejudicial events that occur during the course of a trial.  Bauder
v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).  A
trial court commits error in denying a motion for mistrial only if the argument
is extreme, manifestly improper, injects new and harmful facts into the case,
or violates a mandatory statutory provision, and was thus so inflammatory that
an instruction to disregard will not remove its prejudicial effect from the
minds of the jury.  Hernandez v. State, 805 S.W.2d 409, 414 (Tex. Crim.
App. 1990).  As a general rule, any harm associated with an improper argument
can be cured by an instruction to the jury to disregard the improper comment.  Long
v. State, 823 S.W.2d 259, 269 (Tex. Crim. App. 1991).  The reviewing
court puts its faith in the jury=s ability, upon
instruction, to consciously recognize the potential for prejudice and to
discount the prejudice, if any, in its deliberations.  Gardner v. State,
730 S.W.2d 675, 696 (Tex. Crim. App. 1987).  We presume that the jury
obeyed the trial court=s  instruction to disregard.  See id.  This
analysis holds true except in extreme cases in which it appears that the
argument was of such a character as to suggest the impossibility of withdrawing
the impression produced in the minds of the jurors.  Id.  Only in such
an extraordinary instance would we conclude an instruction to disregard did not
overcome the prejudicial effect of an improper argument.  Wilkerson v. State,
881 S.W.2d 321, 327 (Tex. Crim. App. 1993). 








In this case, the
trial court promptly followed the improper-argument objection with an
appropriate instruction to disregard, and therefore we must apply a rebuttable
presumption that the jury complied with the court=s instruction to
disregard.  See Gardner, 730 S.W.2d at 696.  The statement in
question was not of such a character that the impression produced in the minds
of the jury was so inflammatory that its prejudicial effects could not be
overcome by an instruction to disregard.  See Simpson, 119 S.W.3d at
274.  Thus, we conclude that the trial court did not abuse its discretion in
denying the motion for a mistrial.  See id.  We overrule appellant=s fourth issue. 

Having overruled
all of appellant=s issues, we affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Memorandum Opinion filed February 21, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant presents legal and factual sufficiency as
two separate issues.  However, we will address  these issues together.