#24561-a-JKK

**2008 SD 88**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE PEOPLE OF THE STATE OF
SOUTH DAKOTA IN THE INTEREST
OF J.H.,                                                 Minor Child,

and CONCERNING

B.H. and J.H.,                                          Respondents.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STEVEN R. JENSEN
Judge

* * * *

LAWRENCE E. LONG
Attorney General

JOHN STROHMAN
Assistant Attorney General                      Attorneys for appelleee
Pierre, South Dakota                            State of South Dakota.

MICHAEL J. BUTLER                               Attorney for appellants
Sioux Falls, South  Dakota                      J.H., Minor Child and
                                                B.H. & J.H., Respondents.

* * * *

ARGUED ON APRIL 22, 2008

OPINION FILED **09/10/08**

KONENKAMP, Justice

[¶1.]     J.H. was a champion wrestler and a captain on the Parker High School wrestling team.  After the school term ended, several of the younger and smaller wrestlers told an investigator that before practice sessions and while on bus trips J.H. inserted his finger or fingers into their rectums.  The investigation ultimately resulted in a juvenile delinquency petition.  In the adjudicatory hearing, J.H. said that he never intended to insert his finger into the other wrestlers' rectums — he was performing a legitimate wrestling move called "skinning."  The court concluded otherwise, adjudicating J.H. of having committed seven attempted rapes.  On appeal, J.H. asserts that there was no proof of any sexual intent on his part and the evidence was insufficient to sustain the court's findings.  Because there was sufficient evidence to support the court's decision and an attempted rape may be committed even if the perpetrator had no sexual purpose, we affirm.

### I.

[¶2.]     Sometime after the end of the 2006 school term, allegations arose that J.H., a sixteen-year-old junior, had assaulted several members of the Parker High School wrestling team.  These incidents occurred when J.H. engaged in horseplay either before wrestling practices or during bus trips for wrestling events.  Grades seven through twelve practiced together.  The allegations were that J.H., sometimes with the assistance of other wrestlers, held down smaller or younger members on the team and attempted to insert his finger or fingers through their clothing into their rectums, at times successfully.

[¶3.]      Agent James Severson of the Division of Criminal Investigation looked into these accusations. He interviewed the victims, as well as J.H. and several other members of the wrestling team. A grand jury later indicted J.H. on twenty-one counts of rape and attempted rape. J.H. successfully moved to transfer the proceedings to juvenile court, when the State made no objection. The State filed a delinquency petition alleging, in addition to the previous charges, two Child in Need of Supervision counts. Later, the State voluntarily dismissed ten of the rape and attempted rape charges.

[¶4.]      At the adjudicatory hearing, all the victims testified that team members would engage in horseplay before wrestling practice or on bus trips. But, according to these wrestlers, J.H.'s horseplay was different. Three occurrences typify the victims' testimony and the court's conclusions. In one instance, on a bus ride home from a tournament, J.H. grabbed a fifteen-year-old freshman and took him to the back of the bus, saying "if you scream, I will hurt you." There, with the help of another wrestler, J.H. shoved him onto the floor between two seats, and inserted his finger into the victim's anus. The boy yelled out, but someone covered his mouth.

[¶5.]      More common were the incidents in the school wrestling room before practice sessions, when the coaches had not yet arrived. On one occasion, J.H. told another wrestler to hold a fifteen-year-old freshman down. J.H. then inserted his finger into the boy's "buttock cheeks" while the boy kicked and yelled. The boy testified that he believed J.H.'s finger went into his rectum because it felt worse than the previous time J.H. had done this to him. A fourteen-year-old freshman

was similarly maltreated. J.H. pushed him onto his stomach and stuck his finger into the boy's "butt cheeks," but did not enter his rectum. J.H. covered his mouth when the boy kicked and screamed. J.H. told the boy not to tell anyone about this. Saying he was scared, the boy did not report what happened for some time.

[¶6.]    Although some of the wrestlers said that they thought these acts were all just part of the horseplay, they also said that what J.H. did hurt them or made them feel uncomfortable. As for the question whether this maneuver was a wrestling move called "skinning," the victims described their understanding of the move and said that what J.H. did to them was not skinning.

[¶7.]    The State presented expert testimony from Michael McArthur. His wrestling résumé included several state and national championships, as well as experience as both an Olympic wrestler and coach. McArthur knew the so-called "skinning" move as the "butt drag." The butt drag, according to McArthur, did not involve placing a finger near the rectum. Rather, McArthur described it as "a defensive move when an opponent is attacking the legs. I would — if it was me applying the move, I would be in a sprawled position with my legs back and I would reach over the person's back to the end of their spinal cord and then try to apply pressure up the spinal cord with the — I don't know if it's called the heel of my hand or my forearm, depending on how long my arm is."

[¶8.]    In contrast to McArthur's opinion, volunteer coach Dominick LaRocca gave another understanding of the "skinning" move, a move he taught the Parker wrestlers. A member of the Nebraska Wrestling Coaches' Hall of Fame, LaRocca explained that the move is used to try "to break down the opponent's hips by

reaching into the rectal area and turning a man's hips away from you or towards you, whichever . . . the situation determines." He agreed that the move does "not involve fingers in the rectum." But, he said that in applying this move, in the struggle to gain an advantage over an opponent, there might be inadvertent penetration through the clothing. It "occurs all the time."

[¶9.]        J.H. testified that he never intended to insert his fingers into the rectums of his teammates. Rather, he was just horsing around and wrestling in fun. Even in horseplay, he said that he was performing the wrestling move called "skinning" or "butt drag." This move, according to J.H., is used to bring a wrestler to the floor. The wrestler would be on all fours, and the person doing the "skinning" would reach over and place his hand and fingers on the coccyx and apply pressure forward. J.H. insisted that he never intentionally attempted to insert his finger in another wrestler's anus.

[¶10.]        The circuit court adjudicated J.H. guilty of seven attempted rapes and not guilty of the remaining charges. It found the victims to be credible despite some inconsistencies in their testimony. The court attributed the inconsistencies "to their age and the length of time that passed before they began talking about these experiences." Moreover, the court considered the close relationships of the victims (some are friends and some are related) and that "the victims have to some extent acted in concert with one another since these charges arose."

[¶11.]        In its memorandum opinion, the circuit court wrote that "the evidence overwhelmingly [showed] that J.H.'s intent during each of these incidents was to insert his fingers into the rectums of these young wrestlers apparently for fun or as

a type of initiation." The court found that the victims' allegations were confirmed by some of the wrestlers who were not victims and by some of the older wrestlers who were J.H.'s friends. Moreover, as the court explained, J.H.'s own statements to the law enforcement investigator "corroborate[d] the victims' testimonies." Although J.H. admitted only to "skinning" other wrestlers, the court concluded that "J.H. was not 'skinning' these young wrestlers in the sense of how the wrestling move is applied." Expressing its strong conviction about what had happened, the court remarked that "there are times where the inappropriate 'horseplay' so far crosses the line that it needs to be called what it is, a crime." Written findings and a judgment of adjudication were entered on April 27, 2007.

[¶12.] J.H. appeals asserting that there was insufficient evidence to support his adjudications for attempted rape. He contends that there was no intent "to commit an act of sexual penetration within the meaning of what the law considers rape, under these facts and circumstances[.]"

## II.

[¶13.] We review the sufficiency of the evidence de novo. State v. Tofani, 2006 SD 63, ¶35, 719 NW2d 391, 400 (citing State v. Disanto, 2004 SD 112, ¶14, 688 NW2d 201, 206). "In measuring evidentiary sufficiency, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. ¶24 (quoting Disanto, 2004 SD 112, ¶14, 688 NW2d at 206 (quoting Jackson v. Virginia, 443 US 307, 319, 99 SCt 2781, 2789, 61 LEd2d 560 (1979))).

[¶14.]     In his appellate briefs and oral argument, counsel for J.H. spent considerable effort surveying the contradictions and inconsistencies in the testimony of the wrestling team members who gave evidence against his client.  We have carefully reviewed the transcripts and agree that, in several instances, those inconsistencies are verifiable in the record.  Nonetheless, the circuit court took all this into account, including the five-month delay in reporting the incidents, and still concluded that the salient events occurred as these witnesses recounted.  There is no showing that the court's fact and credibility findings were erroneous.  Under our de novo review, the events as told by the victims appear consistent and, in several instances, corroborated.

### III.

[¶15.]     On a more difficult issue, J.H. maintains that the evidence is insufficient to establish that he intended to penetrate the victims sexually.  He contends that, like other wrestlers, he regularly engaged in horseplay before practice or on bus trips.  The horseplay, J.H. asserts, might sometimes involve conduct that would not be allowed in legitimate wrestling matches, but should not result in adjudications of attempted rape.

[¶16.]     According to J.H., the State failed to prove a purpose to penetrate for sexual gratification or arousal.  Indeed, the court concluded that J.H.'s attempt to stick his fingers into the anuses of his fellow wrestlers was, in effect, a vulgar prank.  In the court's words, "J.H.'s intent during each of these incidents was to insert his fingers into the rectums of these young wrestlers apparently for fun or as

a type of initiation." During the dispositional hearing, the court specifically made a finding on the record that J.H.'s actions were not sexually motivated.

[¶17.]    Do these acts constitute attempted rape if they were done without any sexual intent? As charged in this case, the crime of rape is "an act of sexual penetration accomplished with any person under any of the following circumstances . . . (2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]" SDCL 22-22-1(2). Sexual penetration is defined in SDCL 22-22-2 as "an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another person's body." We construe these statutes "according to the fair import of their terms, with a view to effect their objects and promote justice." SDCL 22-1-1.

[¶18.]    In the first grouping — "sexual intercourse, cunnilingus, fellatio, anal intercourse" — all the acts are innately sexual. It is entirely comprehensible that the Legislature would call these acts "sexual penetration." But "any" intrusions, "however slight, of any part of the body or of any object into the genital or anal openings" are not necessarily sexual in nature. Here we encounter a problem. Did the Legislature intend that literally "any" such "intrusion," regardless of whether the actor had a sexual intent, would constitute rape?

[¶19.]    It appears that the element of sexual intent was deliberately omitted from the rape statute, for it was clearly included in the sexual contact statute. In SDCL 22-22-7.1, the Legislature defined "sexual contact" to include "any touching,

not amounting to rape, whether or not through clothing or other covering, of the breasts of a female or the genitalia or anus of any person *with the intent to arouse or gratify the sexual desire of either party*." (Emphasis added). Evidently, the Legislature believed that certain types of "sexual penetration" could be nonsexual, yet constitute a crime.

[¶20.] At least two other jurisdictions have encountered difficulties in a similar definition of sexual penetration. A Rhode Island statute defined sexual penetration as any "intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body. . . ." State v. Bryant, 670 A2d 776, 783 (RI 1996) (quoting RI Gen Laws § 11-37-1(8) (1981)). The Rhode Island Supreme Court noted that no intent element was included, although one existed in the sexual contact statute. Nevertheless, according to the court, the absence of the intent element "in a statute does not mean the Legislature declined to require a specific mental state but that it rather 'merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation.'" State v. Griffith, 660 A2d 704, 706 (RI 1995) (quoting State v. Tobin, 602 A2d 528, 534 (RI 1992) (quoting Morissette v. United States, 342 US 246, 252, 72 SCt 240, 244, 96 LEd 288, 294 (1952))). To correct this latent defect, the court ruled that necessity required the inclusion of "sexual arousal or gratification in order to preclude the possibility that a defendant could be convicted because of an innocent" penetration. *Bryant*, 670 A2d at 783 (citing *Griffith*, 660 A2d at 707). This "necessity" arose because at common law "nothing short of penile penetration was sufficient in order to constitute the offense of rape" and the risk of innocent

penetrations did not exist. *Id.*; *see also Griffith*, 660 A2d at 706 (citing *Tobin*, 602 A2d at 534 (quoting *Morissette*, 342 US at 252, 72 SCt at 244, 96 LEd 288 (1952))).

[¶21.]    A similar definition of sexual penetration confronted the Mississippi Supreme Court. To reconcile its meaning, the court ruled that

> [a]lthough, on its face, the definition of sexual penetration announced in [Miss Code Ann] § 97-3-97 encompasses *any* penetration, the Court holds the parameters of the definition of sexual penetration are logically confined to activities which are the product of sexual behavior or libidinal gratification, not merely the product of clinical examinations or domestic, parental functions. As stated in *United States v. Harriss*, 347 US 612, 618, 74 SCt 808, 812, 98 LEd 996 (1954), "[I]f [the] general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction."

Roberson v. State, 501 So2d 398, 400-01 (Miss 1987). Thus, the court concluded, sexual penetration must be accompanied by a sexual intent in order to preclude criminal convictions for innocent conduct.

[¶22.]    The Rhode Island case dealt with the crime of "first-degree child molestation sexual assault," and the Mississippi case examined the crime of "sexual battery." *See* RI Gen Laws §§ 11-37-8.1; 11-37-1(8); Miss Code Ann §§ 97-3-95, 97-3-97 (1986). In each case, the crime prohibited "sexual penetration" with an underage or incapacitated person.[*] In neither of these statutes, however, is there an element of "force, coercion, or threats of immediate and great bodily harm," as in the section of the South Dakota statute charged here. That distinguishes our case. Along with

---

[*]    These statutes are similar to South Dakota's definition of rape in SDCL 22-22-1(1), involving sexual penetration of a child under thirteen. J.H. was not charged under this section. We express no opinion on whether this section or SDCL 22-22-1(3) could encompass innocent conduct.

sexual penetration there must be force, coercion, or threats, under SDCL 22-22-1(2). This section in our rape statute obviously contemplates not only penetration in the sexual sense but also penetration in the abusive sense. One who forces or coerces genital or anal penetration with another commits the offense even without any sexual motivation. Thus, under our statutory definition of forced or coercive rape in SDCL 22-22-1(2), we do not have the specter of criminalizing innocent conduct.

[¶23.] It has been repeatedly stated that rape in our State is a general intent crime. State v. Pugh, 2002 SD 16, ¶8 n3, 640 NW2d 79, 82 n3; State v. Perkins, 444 NW2d 34, 38 (SD 1989); State v. Means, 363 NW2d 565, 568 (SD 1985); State v. Houghton, 272 NW2d 788, 791 (SD 1978), *overruled on other grounds by* State v. Willis, 370 NW2d 193 (SD 1985). Therefore, the perpetrator need only intend the prohibited act. State v. Schouten, 2005 SD 122, ¶13, 707 NW2d 820, 824 (citations omitted). Nonetheless, criminal liability must be based on proof that the act was accompanied by a culpable state of mind. State v. Huber, 356 NW2d 468, 472 (SD 1984) (quoting LaFave & Scott, *Handbook on Criminal Law* § 28, at 201 (1972)) ("some form of mental state is a prerequisite to guilt").

[¶24.] J.H. may not have known that his actions constituted a crime. Yet, when he forcibly tried to insert his fingers into the anus of one of his fellow wrestlers, in circumstances where the court found he was not performing the skinning move or any other wrestling maneuver, he committed the offense of attempted rape as defined under our law. While there was no sexual intent, there was a culpable mental state, an abusive intent. We conclude that a rational trier of

#24561

fact could find the essential elements of the acts of delinquency committed by J.H. beyond a reasonable doubt.

[¶25.]     Affirmed.

[¶26.]     GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.