#25375-r-DG

**2010 SD 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

The People of the State of
South Dakota in the Interests of
W.T.M., Minor Child and
Concerning T.K. & T.M.,
Respondents.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE PETER H. LIEBERMAN
Judge

\* \* \* \*

MICHAEL G. MILLER
Minnehaha County Public
  Defender's Office                   Attorneys for appellant
Sioux Falls, South Dakota        W.T.M.

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General      Attorneys for appellee
Pierre, South Dakota           State of South Dakota.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 26, 2010

OPINION FILED **06/16/10**

#25375

GILBERTSON, Chief Justice

[¶1.]        W.T.M. was adjudicated delinquent after the juvenile court found beyond a reasonable doubt that W.T.M. touched his penis to one side of another child's buttocks with the specific intent to arouse or produce sexual gratification in violation of SDCL 22-22-7.  We reverse.

**FACTS**

[¶2.]        On June 21, 2008, eleven-year-old W.T.M. was playing with C.K., an eight-year-old boy, and a young girl in a neighborhood park across from C.K.'s house.  The three children played "pirates" together before W.T.M. and C.K. played a "truth or dare" game outside the park behind a house in close proximity to C.K.'s home.  W.T.M. had learned "truth or dare" from another friend.  As part of the game, W.T.M. dared C.K. to let W.T.M. touch his penis to C.K.'s "butt."  When C.K. hesitated, W.T.M. offered C.K. a small action figure toy for complying.  C.K. pulled down his own pants and underwear.  W.T.M. pulled his shorts down just far enough so that his penis was showing above the waistband.  W.T.M. touched his bare penis to one side of C.K.'s bare buttock.  C.K. would later testify that W.T.M.'s penis felt "squishy."

[¶3.]        K.K., C.K.'s mother, called him in for dinner just as the contact occurred.  When C.K. emerged from a hillside beside a house rather than the park, C.K.'s mother began to question him about why he was playing by the house because C.K. was forbidden from playing by neighboring houses.  K.K. noted that C.K. was evasive and questioned him further.  C.K. told his mother what W.T.M. had done.  However, K.K. understood that W.T.M. had C.K. pull down C.K.'s pants

-1-

and W.T.M. had "stuck his penis in [C.K.'s] butt." K.K. called the police and made a report.

[¶4.] Two uniformed police officers responded and took K.K.'s statement. According to their report, they responded to a report of a sexual assault. C.K. told the responding officer, "I was with my friend [W.T.M.] and he pulled down my pants and he put his here, (pointing to his rear end)." When asked if W.T.M. went inside his "butt" C.K. replied "No, he just touched it." K.K. was asked if she had looked to see if there was any injury to C.K., blood, swelling, or anything out of place, to which she replied, "No."

[¶5.] C.K. showed the officer the secluded area behind the house where the contact occurred. C.K. also indicated that when he initially refused to pull down his pants, W.T.M. offered him first a small action figure toy and then a dollar to do so. C.K. also explained that the two boys had been playing "truth or dare," and the dare was for C.K. to allow W.T.M. to touch his "pee pee" to C.K.'s "butt."

[¶6.] C.K. was taken by K.K. to a hospital for examination. An emergency room physician conducted a visual examination of C.K. but found no signs of injury. A forensic examination kit was performed. A pediatrician conducted an interview of C.K. and K.K. The report indicated the details of the touching. It also noted that C.K. was eight years old, had been adopted by K.K. at age three, and had been formally diagnosed with Fetal Alcohol Syndrome (FAS). No rectal trauma was revealed during the examination. C.K.'s clothing was collected for forensic testing. Counseling was recommended and C.K. was referred to Child's Voice for an interview the following Monday.

[¶7.] The uniformed officers located W.T.M.'s home about an hour after the initial report by K.K. and spoke with W.T.M.'s mother, T.K. At the home was T.K.'s boyfriend, K.R. K.R. called for W.T.M. who was in his bedroom. W.T.M. came into the living room and sat down, but before the police officers could say anything K.R. asked W.T.M. "what the hell were you doing at the park?" W.T.M. looked down at the ground and replied "C.K. dared me to do it."

[¶8.] One of the officers interrupted and asked W.T.M. if he had been at the park playing with C.K. After W.T.M. replied in the affirmative, W.T.M. also told the officer he had come home and changed clothes. The officer asked T.K. for consent to take W.T.M.'s clothing. T.K. provided the clothing. The officer informed T.K. that a detective would be in contact with her at a later time and that "they would be brought in for questioning."

[¶9.] Detective Sean Kooistra (Kooistra) called T.K. and asked her to bring W.T.M. to the Law Enforcement Center for an interview. On June 27, 2008, at 9 a.m., T.K. arrived with W.T.M. for the interview. W.T.M. admitted to touching his penis to one side of C.K.'s buttock and that it was done as part of the game "truth or dare." Kooistra also asked W.T.M. whether he had offered the small action figure toy to C.K., which W.T.M. confirmed. W.T.M. denied offering C.K. a dollar in exchange for the contact.

[¶10.] Kooistra asked W.T.M. where he had learned the "truth or dare" game. W.T.M. replied that he had learned it from some of the older children in the neighborhood and that it involved both girls and boys. According to W.T.M., the boys dared the girls to let the boys kiss them. Kooistra asked W.T.M. if he had also

kissed the girls. W.T.M. vehemently shook his head no. Kooistra asked if anyone had ever tried to touch W.T.M.'s penis or buttocks. Kooistra asked this question twice during the interview, once toward the beginning and again toward the end. Both times W.T.M. replied, "No."

[¶11.] The state's attorney filed a Juvenile Petition to have W.T.M. declared delinquent. It was based on a claim of sexual contact under SDCL 22-22-7. On August 13, 2008, W.T.M. applied for and was granted a court appointed attorney through the Minnehaha Public Defender's office. A contested adjudicatory hearing was scheduled for March 17, 2009.

[¶12.] C.K. testified at the hearing and the videotape of his Child's Voice interview was played in court. At the hearing, C.K. could not remember if W.T.M. had pulled C.K.'s pants down or if he had done so, which testimony was different from what C.K. told the pediatrician at the hospital and the Child's Voice forensic interviewer. C.K. testified at trial that W.T.M. had put his "pee pee" on his "butt," in contrast to C.K.'s statements to K.K. and the responding police officer that W.T.M. had put his penis inside C.K.'s "butt."

[¶13.] After the adjudicatory hearing, the juvenile court entered findings of fact and conclusions of law. It found, beyond a reasonable doubt, that W.T.M.'s actions showed the requisite specific intent under SDCL 22-22-7 to arouse or gratify the sexual desire of either party. The juvenile court further found, beyond a reasonable doubt, that the State presented sufficient evidence to sustain the Juvenile Petition charging W.T.M. with sexual contact and that he was a delinquent child. W.T.M. appeals raising three issues. We find the following one dispositive:

Whether the juvenile court erred when it concluded W.T.M.'s conduct was motivated by specific intent to arouse or produce sexual gratification and adjudicated W.T.M. a delinquent child.

## ANALYSIS AND DECISION

[¶14.] W.T.M. argues the juvenile court erred when it found that he had specific intent to arouse or produce sexual gratification, a required element for violation of SDCL 22-22-7, Sexual Contact with Child under Sixteen. W.T.M. argues that because he did not have an erection, as evidenced by C.K.'s description that W.T.M.'s penis felt "squishy," there was no sexual gratification involved. W.T.M. also argues the evidence noted by the juvenile court as indicating specific intent was insufficient to satisfy the element. Instead, W.T.M. argues the episode was nothing more than a prank or game and lacked the intent to arouse or produce sexual gratification.

[¶15.] We review the sufficiency of the evidence on appeal under the de novo standard. *In re* J.H., 2008 SD 88, ¶13, 756 NW2d 549, 551 (citing State v. Tofani, 2006 SD 63, ¶35, 719 NW2d 391, 400). "In measuring evidentiary sufficiency, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.*, 756 NW2d at 551-52 (quoting *Tofani*, 2006 SD 63, ¶24, 719 NW2d at 398).

[¶16.] SDCL 22-22-7.1 defines sexual contact as "any touching, not amounting to rape, whether or not through clothing or other covering, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party." It is a specific intent crime that requires proof of

the intent to arouse or produce sexual gratification. *Id.* Circumstantial evidence may be sufficient to show the specific intent element of sexual contact. *In re W.Y.B.*, 515 NW2d 453, 455 (SD 1994) (citing *State v. Lovejoy*, 464 NW2d 386, 389 (ND 1990)). Because intent is a subjective state of mind and "'rarely susceptible to direct proof, the factfinder may determine intent by such reasonable inferences and deductions as may be drawn from facts proved by evidence in accordance with common experience and observation.'" *Id.* (quoting *State v. Hilpipre*, 395 NW2d 899, 903 (IowaCtApp 1986)).

[¶17.] The juvenile court found that W.T.M.'s taking C.K. out of the park, away from the other children, and behind the house where no one could see the events that transpired was circumstantial evidence that supported the requisite specific intent to arouse or produce sexual gratification. It was also significant to the juvenile court that W.T.M. promised C.K. a toy in order to induce C.K. to lower his pants and allow the touching. This testimony was corroborated by W.T.M. in his videotaped interview.

[¶18.] Upon reviewing the facts of this case, we are left with a definite and firm conviction that a mistake has been made. While we agree that the offer of the toy was an inducement and the use of a hidden area to perpetrate the act showed knowledge on W.T.M.'s part that what he was doing was wrong, the evidence is not sufficient to establish intent to arouse or produce sexual gratification. There is nothing in the record to suggest W.T.M. was sexually aroused, or intended to sexually arouse C.K. with the contact.

[¶19.] We have previously found circumstantial evidence of sexual contact in *W.Y.B.*, 515 NW2d at 453, and in *State v. Holzer*, 2000 SD 75, 611 NW2d at 647. In *W.Y.B.*, specific intent was satisfied by the conduct of the sixteen-year-old delinquent who poked a fifteen-year-old girl in the buttocks with a stick on more than one occasion and had also once grabbed her breast. 515 NW2d at 456. In *Holzer*, we upheld the trial court's inference that the defendant had specific intent to commit sexual contact based on the defendant's acts of wearing a dildo with his pants unzipped while masturbating as he attempted to gain access to a house occupied by several college-aged women, and being apprehended with "wet" pants indicating it was caused by semen. 2000 SD 75, ¶17, 611 NW2d at 652. We found it was a reasonable inference that the acts showed intent to enter the home for further sexual gratification. *Id.*

[¶20.] In the present case, this was the first time W.T.M. had been accused of the conduct in question. During his interview W.T.M. told Kooistra that this was the first time that he had done anything like this, and that no one had done anything like this to him. There was no evidence introduced to contradict W.T.M.'s claim that he had never before engaged in this type of conduct. W.T.M. could not explain why he did it, other than to say it was part of the "truth or dare" game. W.T.M. also did not tell C.K. to keep the contact a secret or to deny his conduct. The most plausible inference from this conduct is that this was a prank or game to W.T.M., rather than an act committed for sexual gratification by a young boy who had yet to exhibit any interest in sex and only recently expressed interest in girls in his own age group.

[¶21.]     There was evidence presented at trial that W.T.M. intended to touch his penis to C.K.'s buttocks and was aware that it was somehow wrong to do so. However, there was nothing to indicate it was done with the specific intent to arouse or produce sexual gratification. As this Court recently noted in *J.H.*, 2008 SD 88, ¶23, 756 NW2d at 554, the intent to engage in the prohibited act is only sufficient for a conviction of a general intent crime such as attempted rape. "[C]riminal liability must be based on proof that the act was accompanied by a culpable state of mind." *Id.* Circumstantial evidence must point to that culpable state of mind, not just to the knowledge that the act was somehow wrong. Even viewing the evidence in a light most favorable to the State, the element of specific intent was not proven beyond a reasonable doubt. Thus, it was error for the juvenile court to adjudicate W.T.M. as delinquent based on a violation of SDCL 22-22-7.

[¶22.]     Reversed.

[¶23.]     KONENKAMP, ZINTER, MEIERHENRY and SEVERSON, Justices, concur.